**SOUTHWEST LINCOLN–MERCURY, INC., Appellant,**

v.

**David W. ROSS, Appellee.**

**No. 17234.**

Court of Civil Appeals of Texas, Houston (1st Dist.).

Feb. 8, 1979.

Rehearing Denied March 15, 1979.

Caldwell & Hurst, Steve Underwood, Ernest C. Hurst, Houston, for appellant.

Donald S. Stirman, Houston, for appellee.

WALLACE, Justice.

Southwest Lincoln-Mercury, Inc. (Southwest) appeals from a judgment in a suit filed by David W. Ross based on the Texas Deceptive Trade Practice Act (Tex.Bus. & Comm.Code Ann. § 17.41 *et seq.*). The jury found that Southwest improperly painted, improperly repaired the steering mechanism and alignment, and improperly repaired the choke of Mr. Ross' car and that each of these repairs was a deceptive trade practice, and/or a failure to comply with warranty and/or an unconscionable action. The jury also determined reasonable attorney's fees and assessed damages. Southwest asserts no evidence and insufficient points of error, contending that the damage award is unsupported by the evidence and is excessive, and that Section 17.46(a) of the Texas Business & Commerce Code is unconstitutional because it denies due process.

Mr. Ross, while driving a 1976 Lincoln Continental, was involved, on November 28, 1976, in an automobile accident. On December 1, 1976, he took the car to Southwest, asked that obvious body damage and any mechanical difficulties be repaired, and signed the authorization for the work to be done.

On arriving at Southwest on December 12, 1976, Mr. Ross refused to accept the car because the new paint finish was blemished with dirt. Mr. Wilson, a Southwest employee, agreed that the paint was unacceptable and had the car repainted at no cost. Approximately two days later, Mr. Ross returned to pick up his automobile. He testified that the color match was beautiful, that there was some paint runs on the fender, and that he accepted the car. He stated that he made no further complaints to Southwest concerning the paint job and that he never had any additional paint work done on the car.

When he left Southwest's facilities, Mr. Ross noticed that the steering mechanism was not working correctly in that the steering had to be manually straightened out after making a turn. This steering difficulty, Mr. Ross contends, was brought to the attention of Southwest and was never corrected to his satisfaction. He further maintained that he paid to have the steering problem repaired. The repair authorization executed by Mr. Ross on January 11, 1977, states that the steering is to be rechecked and describes the problem. Mr. Ross testified that he never had any additional work done on the steering.

Besides the steering difficulty, Mr. Ross maintained that the car had been running rough and eventually stopped running completely. The car was towed to Southwest where he was told that the choke was sticking and that the car needed a tune up. Repairs were made. After these repairs were made, the car again stopped running and was again towed back to Southwest. Additional work was done, and it was discovered that the fuel was contaminated.

Mr. Ross further alleges that the front end of the car was improperly aligned. At the time of alignment by Southwest, the car had been driven less than 24,000 miles. Six months later a tire blew out and Mr. Ross took the car to to American Tire Com-

pany for replacement. He was informed that because the front end of the car was out of alignment the tire warranty was breached. An expert called by Mr. Ross testified that it was impossible to determine what caused the misalignment; that it could be the result of faulty workmanship or the result of a chug hole or bump in the road. The expert further testified that due to the degree of misalignment, the tires would wear out in 2,000 miles. However, he also stated that it would be highly irregular for both sides of the car to be out of alignment to the same degree.

Four special issues were submitted to the jury. The first, and only one in question, inquired:

Do you find from a preponderance of the evidence that Southwest Lincoln-Mercury, Inc. promised to and/or failed to deliver as promised to David W. Ross his 1976 Lincoln automobile, and/or improperly painted, and/or improperly repaired the steering mechanism, and/or improperly repaired the frame and/or improperly repaired the choke? Answer "Yes" or "No" in Column 1. If you have answered "Yes" to any in Column 1, then answer whether or not such action or failure to act was a deceptive trade practice and/or a failure to comply with an express or implied warranty, and/or an unconscionable act of [sic] course of action under Column 2.

| 2. | Column 1 action or inaction | Column 2 deceptive trade practice, failure to comply with warranty, unconscionable action |
|---|---|---|
| 1. promised to and/or failure to deliver | No | |
| 2. improperly painted | Yes | Yes |
| 3. improperly repaired steering mechanism | Yes | Yes |
| 4. improperly repaired frame | No | |
| 5. improperly repaired choke | Yes | Yes |

Under Section 17.50 of the Texas Business and Commerce Code, a consumer may maintain an action if he has been adversely effected by (1) the breach of an express or implied warranty, (2) any unconscionable action or course of action by any person, or (3) the use or employment by any person of an act or practice declared to be unlawful by Section 17.45. To sue for breach of warranty with the breach being the foundation of a claim for treble damages under the Deceptive Trade Practices Act, the buyer must notify the seller that a breach of warranty has occurred. *Import Motors, Inc. v. Matthews*, 557 S.W.2d 807 (Tex.Civ.App.1977, writ ref'd. n. r. e.). This notification is required by Section 2.607(c)(1) of Texas Business and Commerce Code which provides in pertinent part:

(c) Where a tender has been accepted
   (1) The buyer must within a reasonable time after he discovers or should have discovered any breach notify the seller of breach or be barred from any remedy.

In *Import Motors, Inc. v. Matthews, supra,* the plaintiff sued an automobile dealership alleging breach of warranty in connection with the sale of a new automobile. Within a month from the date of purchase, the automobile began using an "inordinate" amount of oil. The car was returned to the dealership several times to correct the problem. Approximately six months after the plaintiff's last visit to the dealership, the plaintiff took the automobile to another automobile repair shop. There it was discovered that the oil leak had damaged the

clutch. The plaintiff filed suit alleging that the automobile dealership had committed a deceptive trade practice by "impliedly representing that its repair service was of customary quality within the automobile repair business, when, in fact, the service was substantially below standard."

■ The court, basing its decision on Section 2.607(c)(1) of the Texas Business and Commerce Code and its applicability to Section 17.50 of the same code, held that because the plaintiff did not notify the automobile dealership of the oil leak's reoccurrence and thereby afford the dealership an opportunity to cure the leak, the plaintiff was barred from recovering on the basis of breach of warranty. *Id.* at 809. In our case, Mr. Ross testified that subsequent to the repair work, he advised Southwest by letter that he was unhappy with its work. The letter is not in evidence, and the record does not disclose when the letter was allegedly sent. We are unable to ascertain whether Southwest was given notice as prescribed by Section 2.607(c) of the Texas Business and Commerce Code. Consequently, there is no evidence to support a jury finding of breach of warranty.

■ An action may also be maintained under the Deceptive Trade Practices Act if the consumer has been adversely affected by "any unconscionable action or course of action by any person." Section 17.50 Tex. Bus. & Comm.Code. An "unconscionable action or course of action" is defined by Section 17.45(5) of the Texas Business & Commerce Code to be "an act or practice which, to a person's detriment:

(A) takes advantage of the lack of knowledge, ability, experience, or capacity of a person to a grossly unfair degree; or

(B) results in a gross disparity between the value received and consideration paid, in a transaction involving transfer of consideration

The trial court, in its charge to the jury, described "unconscionable action" as "an act or series of acts which do not contemplate good faith dealing, and through such course of action, the person engaging in such conduct secures an unfair advantage over another person."

The record in our case fails to disclose unconscionable conduct on the part of Southwest. Mr. Ross intimates in his testimony and the court submitted in Special Issue 1(5) that the repair of the choke may have been unnecessary. The evidence shows that when the automobile was examined, after being towed to Southwest, the choke was stuck wide open and that is what prevented the automobile from starting. The choke was repaired and a minor tune up was performed after which the automobile ran smoothly and was delivered to Mr. Ross. The automobile quit running after Mr. Ross had driven it some sixty miles and was again towed to the dealership. Upon examination of the automobile, Southwest discovered that the fuel was contaminated and that the filters in the fuel tank and the carburetor were also contaminated. This difficulty was repaired and the record does not reflect any further trouble with the automobile's running smoothly. In each instance, the record discloses an apparent good faith on the part of the dealership to comply with Mr. Ross's request.

■ The final means by which Mr. Ross sought recovery is under the umbrella term "deceptive trade practice." Section 17.46(b) of the Texas Business and Commerce Code provides a "laundry list" of actions that are unlawful per se. This list is not exclusive and will encompass any type of business practice or action which deceives consumers. *Spradling v. Williams*, 553 S.W.2d 143, 145 (Tex.Civ.App.1977) affirmed 566 S.W.2d 561 (Tex.1978). An act or practice, however, which is not among those listed in Section 17.46(b) requires a jury issue to determine whether the action was deceptive, *Spradling v. Williams*, supra at 564. Where an unlisted action is involved, the plaintiff must not only obtain a finding that the act or practice occurred, but also that the act or practice was, in fact a deceptive trade practice. *Id.* at p. 564.

■ Special Issue 1, in our case, meets these requirements by asking a twofold

question: (1) whether the act or practice occurred and (2) if the act or practice occurred, whether it was a deceptive trade practice. The jury found that Southwest improperly painted, improperly repaired the steering mechanism and alignment, and improperly repaired the choke of Mr. Ross' car. In turn, the jury found that each of these actions was a deceptive trade practice, and/or a failure to comply with warranty, and/or an unconscionable action. As previously discussed, there is no basis for a jury finding of either breach of warranty or unconscionable action. Consequently, the only means by which the judgment may be upheld is if there is sufficient evidence to support a finding of "deceptive trade practice."

In its points of error 1 & 2, Southwest contends that there is no evidence and, alternately, insufficient evidence to support the jury's finding that Southwest's repair of the car was a deceptive trade practice. The court, in its charge to the jury defined "deceptive trade practices" as "a course of conduct that, when performed in trade or commerce, has the tendency and capacity to mislead that portion of the general public toward whom such conduct is directed." The court further stated—"In determining 'tendency' and 'capacity' to mislead, you are instructed to look to the overall impression such conduct would have on the general public, including the ignorant, the unthinking, and the unsophisticated."

■ In reviewing no evidence points, this court must consider only the evidence and inferences tending to support the jury's finding. Evidence and inferences to the contrary must be disregarded. *Garza v. Alviar*, 395 S.W.2d 821, 823 (Tex.1965); Calvert, " 'No Evidence' and 'Insufficient Evidence' Points of Error," 38 Tex.L.R. 361, 364 (1960). An examination of the record reveals the following: the initial paint repair was unacceptable to both Mr. Ross and Southwest; the car was repainted at no cost to Mr. Ross; Mr. Ross accepted the second paint job although he was not entirely happy with it; no further complaint concerning the paint was ever made to

Southwest and no additional paint work was ever done on the automobile in question. This scenario involves "no course of conduct that . . . has the tendency to mislead . . ." Consequently there is no evidence to support the jury's finding of a deceptive trade practice regarding Southwest's painting of Mr. Ross' car.

In its points of error 3 and 4, Southwest asserts no evidence and insufficient evidence to support the jury's finding that Southwest's repair of the choke was a deceptive trade practice. Again, there is no evidence of deception. Although the car did quit running and had to be towed in, the only evidence in the record as to the cause of the car's not running was that the choke was stuck wide open and that the plugs were fouled because of an excess amount of gas going through the choke. This condition was repaired and the car ran properly. Consequently there is no evidence to support the finding that the choke repair was unnecessary or that Mr. Ross was mislead in any way in regard to the choke repair.

Southwest, in Points of Error 5 and 6, maintains that there was no evidence or insufficient evidence that Southwest's repair of the steering was a deceptive trade practice. Although the special issue only referred to steering, the court allowed the jury to consider evidence of front-end alignment as well. There was evidence to the effect that the car was out of alignment. In addition, a work order dated January 11, 1977 states that Southwest was to recheck the steering. This constitutes evidence that there was a steering problem which was brought to Southwest attention at that time.

■ In examining an insufficiency point, the court must weigh all the evidence in the case, including that which is contrary to the verdict. *In re King's Estate*, 150 Tex. 662, 244 S.W.2d 660 (1952); Calvert, " 'No Evidence' and 'Insufficient Evidence' Points of Error", 38 Tex.L.Rev. 361, 365 (1960). Mr. Ross testified that the steering was never repaired to his satisfaction. The repair order of January 11, 1977, shows that

this condition was brought to the attention of Southwest. The record further discloses that Mr. Ross continued to drive the automobile until October of 1977, when he transferred his lease on the automobile to a Mr. Wilkins. Mr. Wilkins was called to testify by the plaintiff and did testify that he was still driving the automobile at the date of the trial. January 24, 1978. Both Mr. Ross and Mr. Wilkins testified that they had not had any repair made to the steering mechanism of the automobile in the year that had lapsed since it was last seen by Southwest. As regards the alignment, Mr. Ross' own expert testified that both front wheels on Mr. Ross' car were out of alignment to the same degree; that it is highly irregular but not impossible for both sides to be out the same degree; that the misalignment could possibly have been caused by a bump in the road or a rough railroad crossing; that a tire can get out of alignment five minutes after the car is driven off the alignment rack if it hits a curb or railroad crossing too hard; that due to the degree of misalignment, the tires would wear out in two thousand miles; and that it would be impossible to determine if the misalignment was man-made or the result of a chug hole. He further testified that a tire would wear out at a maximum of two thousand miles on an automobile with the front end out of alignment to the degree that Mr. Ross' was out of alignment at the time he inspected it. Mr. Ross testified that his car had thirty thousand miles on it when he had a tire blow out. At the time Southwest aligned the front end of the automobile, the car had less than twenty four thousand miles on it. Thus, the car had been driven in excess of six thousand miles and for a period in excess of six months at the time the tire blew out due to the front end being misaligned. In view of this fact coupled with the expert's testimony that the tires can become misaligned within five minutes if a road hazard is hit, there is insufficient evidence to support the jury's finding of the deceptive trade practice.

The judgment of the trial court is reversed and this case is remanded.

EVANS and WARREN, JJ., join in this opinion.