IN THE UNITED STATES COURT OF APPEALS

FOR THE FIFTH CIRCUIT

_____

No. 97-41397
Summary Calendar
_____


THE PILLSBURY COMPANY,

                         Plaintiff-Appellant,

     v.

MARLEN RESEARCH CORPORATION,

                         Defendant-Appellee.

_____

Appeal from the United States District Court
for the Eastern District of Texas
(4:96-CV-199)
_____

October 7, 1998

Before KING, BARKSDALE, and STEWART, Circuit Judges.

PER CURIAM:[*]

     Following a jury trial, the district court entered a
judgment against plaintiff-appellant The Pillsbury Company
absolving defendant-appellee Marlen Research Corporation of
liability following a machine breakdown and subsequent
contamination of The Pillsbury Company's cookie dough.  The
Pillsbury Company appeals the district court's denial of its
motion for a new trial.  We affirm.

_____

     [*]Pursuant to 5TH CIR. R. 47.5, the court has determined that
this opinion should not be published and is not precedent except
under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

I.   FACTUAL & PROCEDURAL BACKGROUND

In early 1994, The Pillsbury Company (Pillsbury) bought a food pump from Marlen Research Corporation (Marlen) for use in producing slice and bake cookie dough in Pillsbury's Denison, Texas plant.  Marlen trained Pillsbury employees on the proper use and care of the machine.  The Denison food pump included, as standard equipment, a funnel made of Delrin plastic that connected a large hopper filled with mixed dough to a pump attached to tubing, which wrapped the dough for retail sale.

In April 1994, shortly after the food pump went into operation, Pillsbury had a problem with chocolate chips bunching up inside the funnel.  Sporadically, this problem resulted in some dough packages consisting entirely of chocolate chips, as the pump released the bunched chocolate chips all at once into the tubing.  After Pillsbury reported this problem to Marlen, Marlen recommended that Pillsbury replace the Delrin plastic funnel with a funnel made of Lexan plastic.  This recommendation was based on Marlen's experience with a similar bunching problem at a General Mills plant in the 1980s, which was solved through use of a Lexan funnel.  Marlen ordered the Lexan funnel for the Denison food pump.

In May 1994, a Pillsbury employee inadvertently put a wrench into the Denison food pump along with a batch of dough, jamming the pump, breaking some pump components, and scraping the pump itself.  Coincidentally, Marlen employees were present at the

2

Denison plant at the time, and they disassembled the pump and ordered replacement parts. After installing these parts, a Marlen employee noted on a service report that the pump was now operating "satisfactorily," but also wrote that the pump had been bent, which "must be corrected ASAP." The next day, another Marlen employee verified that the pump was operating "satisfactorily," and Pillsbury returned the pump to normal operations.

In June 1994, Pillsbury received and installed the Lexan plastic funnel, replacing the Delrin funnel. Pillsbury then conducted a series of test runs with the new funnel and determined that the Lexan funnel alleviated the chocolate chip bunching problem. After these tests, the pump resumed normal production. Pillsbury employees performed ordinary maintenance on the pump on June 20 and 27, noting nothing unusual in its condition.

On July 4, 1994, a Pillsbury maintenance worker noticed that two pieces of Lexan were missing from the funnel. Normal production continued until July 6, when a Marlen employee, at the plant for an unrelated matter, learned of the missing Lexan and disassembled the pump. This time, three pieces of Lexan were missing. The missing pieces corresponded to the areas of the funnel attached to the pump parts damaged in the wrench accident. Following this discovery, Pillsbury halted production and sold as scrap all dough possibly contaminated with the Lexan pieces.

Pillsbury filed suit against Marlen in the 59th Judicial

District of Grayson County, Texas, alleging negligence and breach of an implied warranty to perform repairs in a good and workmanlike manner.  Marlen removed the case to the United States District Court for the Eastern District of Texas, Sherman Division.  After a three-day trial, the jury deliberated for eleven minutes and returned a verdict for Marlen.  The district court denied Pillsbury's motions for a new trial and reconsideration.

## II.  STANDARD OF REVIEW

The grant or denial of a motion for a new trial will not be reversed absent abuse of discretion.  Calcasieu Marine Nat'l Bank v. Grant, 943 F.2d 1453, 1464 (5th Cir. 1991).  A district court's denial of a new trial motion is reviewed more deferentially than a district court's decision to grant such a motion.  Brady v. Fort Bend County, 145 F.3d 691, 713 (5th Cir. 1998).  As the trial judge has the opportunity to observe the witnesses in a live trial, the district court abuses its discretion in denying a motion for new trial on evidentiary grounds only if "there is an absolute absence of evidence to support the jury's verdict."  Roberts v. Wal-mart Stores, Inc., 7 F.3d 1256, 1259 (5th Cir. 1993).  This deference "'operates in harmony with deference to the jury's determination of the weight of the evidence and the constitutional allocation to the jury of questions of fact.'"  Brady, 145 F.3d at 713 (quoting Shows v. Jamison Bedding, Inc., 671 F.2d 927, 930 (5th Cir. 1982)).

## III.  DISCUSSION

4

Pillsbury raises two issues on appeal--(1) insufficient evidence supported the jury's verdict that Marlen did not breach its implied warranty to make good and workmanlike repairs and (2) the jury was motivated by passion or prejudice.  We discuss each of these issues in turn.

Pillsbury contends that the district court's refusal to grant a new trial on the implied warranty claim was an abuse of discretion.  We disagree.  Before the jury began deliberations, the district court instructed as follows:

> When parties contract to repair or modify existing tangible goods, the law deems a warranty or representation to be made by the repairer that all repairs or modifications to existing tangible goods are made in a good and workmanlike manner.  A good and workmanlike manner is that quality of work performed by one who has the knowledge, training or experience necessary for the successful practice of a trade or occupation and performed in a manner generally considered proficient by those capable of judging such work.  This warranty does not require the repairer to guarantee the results of their work; the warranty only requires those who repair or modify existing tangible goods to perform those services in a good and workmanlike manner.

Pillsbury argues that no evidence supports the jury's conclusion that Marlen repaired the food pump funnel with the same level of proficiency as a repairer with Lexan expertise. Pillsbury insists that while it offered evidence at trial showing Marlen's complete lack of experience with Lexan, Marlen failed to offer any evidence suggesting that it had such Lexan expertise. Therefore, Pillsbury concludes, there is an absence of any evidence supporting the jury verdict.  However, this characterization of the record ignores evidence on which the jury

5

could legitimately have relied in concluding that Marlen fulfilled its duty to Pillsbury.

First, Marlen introduced evidence that the only other time it had ever encountered a chocolate chip bunching problem with a food pump, it successfully solved the problem by switching the Delrin funnel with a Lexan funnel. This experience with the General Mills food pump and the success of the Lexan funnel in remedying a situation similar to Pillsbury's gave Marlen some measure of experience using Lexan funnels in food pumps. The jury could rationally have relied on this evidence to conclude that Marlen had acted in a good and workmanlike manner--that Marlen had the requisite Lexan expertise necessary to recommend Lexan for the Denison food pump.

Second, even Pillsbury admits that the Lexan funnel did, in fact, alleviate the chocolate chip bunching condition. The simple fact that Marlen recommended a successful remedy, the Lexan funnel, for the very problem with which Pillsbury approached Marlen with, implies that Marlen possessed a level of expertise both in repairing its food pumps and in using Lexan funnels.

Third, Pillsbury chose not to repair the wrench-damaged pump. The jury could have concluded that the dented pump caused the Lexan filter corrosion; there is no evidence that but for the wrench accident, the filter would nonetheless have disintegrated. Marlen informed Pillsbury that the pump had been damaged by indicating on its service form that the pump needed to be

6

repaired "ASAP." In addition, Pillsbury employees performing maintenance after the Lexan funnel was installed and the pump was damaged did not note any wear on the funnel. Here, a knowledgeable customer, trained by the manufacturer, chose not to repair its own machine. In Sears, Roebuck & Co. v. Nichols, 819 S.W.2d 900 (Tex. App.--Houston [14th Dist.] 1991, writ denied), a Texas court of appeals held the implied warranty was fulfilled in circumstances similar to these. In that case, an informed customer insisted that only some recommended repairs be made to a lawnmower, and the absence of one of the repairs led to a breakdown of the mower. Id. at 902. The Texas court of appeals held that the implied warranty protects customers from inferior services but does not allow customers to escape the consequences of their own decisions. Id. at 905. The jury in this case was similarly entitled to find that Pillsbury knew the pump had to be repaired, chose not to do so, and must take responsibility for its own decision.

These examples are not necessarily exhaustive, but they need not be. They are all rational bases upon which the jury could have decided that Marlen's decision to recommend a Lexan funnel met the level of proficiency necessary under the implied warranty theory. The jury could have found that Marlen's decision comported with the decision one with knowledge, training, or experience with Lexan would make. Because the record is not devoid of any evidence suggesting Marlen met this burden, we will not disturb the district court's judgment and denial of

7

Pillsbury's new trial motion.

Pillsbury also argues on appeal that the district court should have granted a new trial because the short jury deliberations evidenced passion or prejudice.  Though it is true that if the jury verdict resulted from passion or prejudice, a new trial is the proper remedy, Wells v. Dallas Indep. Sch. Dist., 793 F.2d 679, 683 (5th Cir. 1986), such evidence of improper motivation is lacking here.

Pillsbury bases its contention that the duration of the jury deliberations provides a basis for reversal on Kearns v. Keystone Shipping Co., 863 F.2d 177, 182 (1st Cir. 1988), in which the First Circuit held that, even though the absolute time of deliberations is irrelevant, when short deliberations are coupled with insufficient evidence, the district court should set aside the verdict.  This is an unspectacular proposition and one that could be reached without examining the length of deliberations.  As discussed above, in this case the evidence is sufficient and therefore Kearns does not apply.  As the First Circuit later articulated, if the evidence is sufficient to support the verdict, the "complaint [that short jury deliberations evidence a verdict infected by passion or prejudice] is easily defeated." Ahern v. Scholz, 85 F.3d 774, 785 (1st Cir. 1996).

This circuit's case law makes clear that the actual time of deliberations is irrelevant to the legitimacy of the judgment.  In affirming a verdict based on a jury's fourteen-minute deliberations, this court stated, "We cannot hold an hour-glass

8

over a jury.  If the evidence is sufficient to support the verdict, the length of time the jury deliberates is immaterial." Marx v. Hartford Accident & Indem. Co., 321 F.2d 70, 71 (5th Cir. 1963).  More recently, we affirmed a district court's refusal to grant a new trial after a jury deliberated only ten minutes. Guaranty Serv. Corp. v. American Employers' Ins. Co., 893 F.2d 725, 729 (5th Cir. 1990)("The evidence in this case supports the verdict of the jury; therefore, it is of no importance that the jury's determination was made in only ten minutes."), modified on other grounds, 898 F.2d 453 (5th Cir. 1990).  Pillsbury's suggestion that the jury in this case quickly considered negligence defenses in deciding the implied warranty claim is irrelevant to the legitimacy of the verdict.  As the record supports the jury's verdict, Pillsbury's argument that the trial court abused its discretion by not ordering a new trial on the basis of the jury's short deliberations lacks merit.

## IV.  CONCLUSION

For the foregoing reasons, we AFFIRM the district court's denial of Pillsbury's new trial motion.