Opinion issued June 4, 2009










 



In The

Court of Appeals

For The

First District of Texas






NO. 01-08-00190-CV






BRIGGS EQUIPMENT TRUST, Appellant


V.


HARRIS COUNTY APPRAISAL DISTRICT, Appellee






On Appeal from the 280th District Court

Harris County, Texas

Trial Court Cause No. 2007-28112






O P I N I O N


 This is an appeal from a take-nothing judgment against Briggs Equipment Trust
("Briggs") in an ad valorem tax valuation case. In several related issues on appeal,
Briggs contends the trial court erred by improperly applying section 23.1241(a)(8) 
of the Tax Code in determining the taxable value of Briggs's heavy equipment
inventory.

BACKGROUND

The Relevant Statutes

 Briggs sells heavy equipment in Harris County, and, as such, is required to file
a declaration each year with Harris County Appraisal District ("HCAD") regarding
the value of its heavy equipment inventory. See Tex. Tax Code Ann. § 23.1241(f)
(Vernon 2008). The Tax Code defines heavy equipment inventory as follows:

 "Dealer's heavy equipment inventory" means all items of heavy
equipment that a dealer holds for sale at retail. The term includes items
of heavy equipment that are leased or rented but subject to a purchase
option by the lessee or renter.


Tex. Tax Code Ann. § 23.1241(a)(3) (Vernon 2008).


 The Tax Code provides for the computation of tax on a heavy equipment
inventory as follows:

 [T]he market value of a dealer's heavy equipment inventory on January
1 is the total annual sales, less sales to dealers, fleet transactions, and
subsequent sales, for the 12-month period corresponding to the
preceeding tax year, divided by 12; and


 a sale is considered to occur when possession of an item of heavy
equipment is transferred from the dealer to the purchaser.


Tex. Tax Code Ann. § 23.1241(b)(1);(2) (Vernon 2008).


 The Tax Code defines "total annual sales" as "the total of the sales price for
each sale from a dealer's heavy equipment inventory in a 12-month period. Tex. Tax
Code Ann. § 23.1241(a)(9) (Vernon 2008). "Sales price" means (1) "the total
amount of money paid or to be paid to a dealer for the purchase of an item of heavy
equipment," or (2) "for a lease or rental with an option to purchase, the total amount
of the lease or rental payments plus any final consideration, excluding interest." Tex.
Tax Code Ann. § 23.1241(a)(7) (Vernon 2008). Finally, the Tax Code defines a
"subsequent sale" as follows:

 "Subsequent sale" means a dealer-financed sale of an item of heavy
equipment that, at the time of the sale, has been the subject of a dealer-financed sale from the same dealer's heavy equipment inventory in the
same calendar year.


Tex. Tax Code Ann. § 23.1241(a)(8) (Vernon 2008).


Briggs's Calculation Pursuant to the Statutes


 Using these definitions, for 2006, Briggs reported "total annual sales" of
$98,309,462 (4,363 transactions). From this amount, it subtracted $62,338,113 in
"subsequent sales" (3,104 transactions), $779,029 in dealer sales (34 transactions),
and 17,010,423 in fleet sales (649 transactions), to reach its reported heavy equipment
inventory of $18,181,897 (576 transactions), which, when divided by 12, leaves a
market value of $1,515,158. The "subsequent sales" reported by Briggs were 3,104
lease transactions in which the lease contained a purchase option that was never
exercised.

 Briggs's comptroller explained that all of their equipment qualified as heavy
equipment inventory because all of their leases contained purchase options. 
Therefore, the first time a piece of equipment was leased, Briggs would include the
lease price in its market-value calculation, plus the remaining consideration that it
would receive if the lessee chose to exercise the purchase option. However, if the
first lessee did not exercise the purchase option, the next time Briggs leased the
equipment, it would exclude the transaction, i.e., the lease payments and the
remaining price, even if the purchase option was never exercised and the remaining
price never paid. Briggs classified these subsequent and repeat leases as "subsequent
sales" and excluded them from the market value calculation of its heavy equipment
inventory.

HCAD's Calculation Pursuant to the Statutes

 HCAD disagreed with Briggs's calculation. HCAD began its calculation by
accepting Briggs's total annual sales amount of $98,309,462 (4,363 transactions),
from which it accepted and excluded $779,929 in dealer sales (34 transactions) and
$17,010,423 in fleet sales (649 transactions). However, HCAD did not agree that the
$62,338,113 (3,104 transactions) qualified as subsequent sales, and therefore it
refused to subtract that amount, leaving a heavy equipment inventory of $80,520,010
(3,680 transactions), which, when divided by 12, leaves a market value of $6,710,000.

LAW AND ANALYSIS

Standard of Review

 In an appeal of a judgment rendered after a bench trial, the trial court's findings
of fact have the same weight as a jury's verdict, and we review the legal and factual
sufficiency of the evidence used to support them just as we would review a jury's
findings. Catalina v. Blasdel, 881 S.W.2d 295, 297 (Tex. 1994); In re K.R.P., 80
S.W.3d 669, 673 (Tex. App.--Houston [1st Dist.] 2002, pet. denied). When
challenged, a trial court's findings of fact are not conclusive if, as in the present case,
there is a complete reporter's record. In re K.R.P., 80 S.W.3d at 673; Amador v.
Berrospe, 961 S.W.2d 205, 207 (Tex. App.--Houston [1st Dist.] 1996, writ denied). 
 Briggs had the burden to prove that the market value of its inventory was
different than the value appraised by HCAD. See Sears Roebuck & Co. v. Dallas
Cent. Appr. Dist., 53 S.W.3d 382, 386 (Tex. App.--Dallas 2000, pet. denied). When,
as here, a party challenges the legal sufficiency of the evidence supporting an adverse
finding on an issue on which it has the burden of proof, that party must demonstrate
on appeal that the evidence conclusively established all vital facts in support of the
issue. Dow Chem. Co. v. Francis, 46 S.W.3d 237, 241 (Tex. 2001). When a party
attacks the factual sufficiency of an adverse finding on an issue on which it has the
burden of proof, it must demonstrate on appeal that the adverse finding is against the
great weight and preponderance of the evidence. Id. at 242. We review a trial court's
conclusions of law de novo. In re Moers, 104 S.W.3d 609, 611 (Tex. App.--Houston
[1st Dist.] 2003, no pet.). We independently evaluate a trial court's conclusions to
determine their correctness, and we will uphold conclusions on appeal if the judgment
can be sustained on any legal theory supported by the evidence. Id.

 Statutory construction is a question of law that the appellate court reviews de
novo. In re Forlenza, 140 S.W.3d 373, 376 (Tex. 2004). "Th[e] enacted language
[of a statute] is what constitutes the law, and when a statute's words are unambiguous
and yield a single inescapable interpretation, the judge's inquiry is at an end." Alex
Sheshunoff Mgmt. Servs., L.P. v. Johnson, 209 S.W.3d 644, 651-52 (Tex. 2006). The
primary objective in construing any statute is to determine and give effect to the
Legislature's intent. Warner v. Glass, 135 S.W.3d 681, 683 (Tex. 2004). We begin
with the plain and common meaning of the statute's words. Id.; Tex. Gov't Code
Ann. § 311.011(a) (Vernon 2005). "If the meaning of the statutory language is
unambiguous, we adopt . . . the interpretation supported by the plain meaning of the
provision's words and terms." Fitzgerald v. Advanced Spine Fixation Sys., Inc., 996
S.W.2d 864, 865 (Tex. 1999). 

Propriety of Take-Nothing Judgment

 In issue one, Briggs contends the trial court erred in rendering a take-nothing
judgment rather than declaring the taxable value of Briggs's heavy equipment
inventory. HCAD responds that Briggs waived this issue at trial. We agree.

 After the close of evidence at trial, the following exchange took place between
the attorneys for the parties and the trial court:

 [Trial Court]: Okay. What am I supposed to do?


 [HCAD's counsel]: We have represented to the Court that Briggs'[sic] 
interpretation -- and would so represent in findings of facts and
conclusions of law -- interpretations of the statute would permit taxable
property to, in the manner described, escape taxation or result in a
partial total exemption of that property, which is not allowed.

 It is a question of statutory interpretation and application. I've
already informed the Court that we believe as a matter of law that there
can be no award of attorney's fees in that circumstance irrespective of
what the Court does, and if the Court finds that it should enter a final
judgment, what the Harris County Appraisal District would request and
submit -- again in findings of fact and in the form of a judgment --
would be a take-nothing judgment which simply leave the number that
is on the appraisal roll, which the Court has before it in Defendant's
Exhibit 5, as is. We believe Briggs' interpretation is incorrect.

 Have I answered the Court's question?


 [Trial Court]: Yes. So according to you -- according to your belief, I
do not find an appraisal value. I just find an interpretation of the statute.


 [HCAD's counsel]: Correct. And the appraisal roll stands as is and we
have informed the Court of what that number is. It's -- versus the
number in Plaintiff's Exhibit 1.


 [Trial Court]: Okay. And the number is on your Exhibit 5?


 [HCAD's counsel]: Right, and its not unlike the Seven Investments
Supreme Court case, which I've just handed to the Court, which is Tab
D.


 [Trial Court]: Okay. Well, does plaintiff disagree with how I get to a
judgment?


 [Briggs' counsel]: Not necess -- well, I get the feeling we're going to
disagree with your judgment but --


 [Trial Court]: Yeah, I dis -- yes, I suspect you are.


 [Brigg's counsel]: But whether or not you put a specific value or put
a take nothing -- I mean, the - if you're putting their value or you put
a take nothing, the effect is the same.


 [Trial court]: Okay. Because I -- I agree that what I'm really doing is
interpreting the statute the way I think it means and I'm not accepting
plaintiff's interpretation. I guess I haven't really heard what defendant's
interpretation is but I suspect it's along the line of what I'm thinking.


 Based on this exchange, it is clear that the parties and the trial judge discussed
whether she would determine actual taxable value or whether she would merely
determine whether Briggs's interpretation of the statute involved was correct. Both
attorneys agreed that the issue in the case was one of statutory interpretation and, as
stated by Briggs's attorney "if you're putting [HCAD's value] or you put a take
nothing, the effect is the same." In light of this statement by Briggs's counsel, Briggs
cannot now complain that the trial court erred because it did not include an actual
numerical taxable value in its judgment. 

 We overrule issue one.

"Subsequent Sales"

 In issues two through five, Briggs contends the trial court erred in disallowing
Briggs's exclusion of "subsequent sales" under section 23.1241(a)(8) of the Tax
Code. Specifically, Briggs contends that, once it had included a piece of equipment
with a lease-purchase option in its heavy equipment inventory, if the purchase option
were not exercised, Briggs should be allowed to categorize each subsequent lease of
the same equipment as a "subsequent sale" under section 23.1241(a)(8). HCAD
responds that successive leases do not qualify as "subsequent sales" under section
23.1241(a)(8).

 The "successive sales" exception to the heavy equipment inventory statute
provides as follows:

 "Subsequent sale" means a dealer-financed sale of an item of heavy
equipment that, at the time of the sale, has been the subject of a dealer-financed sale from the same dealer's heavy equipment inventory in the
same calendar year.


Tex. Tax Code Ann. § 23.1241(a)(8).


 Plain Language of the Statute


 HCAD first argues that the successive leases cannot be subsequent sales
because they are not "dealer-financed sales," as that term is defined by the Tax Code. 
We agree. The Tax Code defines a "dealer-financed sale" as "the sale at retail of an
item of heavy equipment in which the dealer finances the purchase of the item, is the
sole lender in the transaction, and retains exclusively the right to enforce the terms
of the agreement that evidences the sale." Tex. Tax Code Ann. § 23.1241(a)(3)
(Vernon 2005).

 Even if we were to assume that the term "sale" in the exclusion includes leases
with purchase options that are never exercised, we cannot conclude that such
transactions are "dealer-financed." The term "finance" means "to raise or provide
funds." Black's Law Dictionary 662 (8th ed. 2004). Briggs admittedly did not
provide any funds to further the lease or purchase of any heavy equipment. However,
Briggs argues that by providing "some terms for delay in payment with the possible
imposition of interest," (1) it has "financed" the purported "subsequent sales"
transactions. But Briggs provides no authority for this assertion, and we fail to see
how imposing a penalty for late payment equates to providing "financing," which is
essentially the lending of funds. Based on the plain language of the statute, we
conclude that Briggs's repeated leases with unexercised purchase options are not
"subsequent sales" because they are not "dealer-financed."

 History of the "Subsequent Sales" Exclusion

 In 1993, the Texas Legislature enacted a special inventory-valuation law
relating to the valuation of a dealer's motor-vehicle inventory. See Tex. Tax Code
Ann. § 23.121-22 (Vernon 2008). Similar special inventory valuation laws were
passed for dealers in vessels and outboard motors, manufactured housing, and heavy
equipment. See Tex. Tax Code Ann. § 23.124-25 (Vernon 2008) (regarding
inventory valuation of vessels and outboard motors); Tex. Tax Code Ann. §
23.127-28 (Vernon 2008) (regarding inventory valuation of manufactured housing.);
Tex. Tax Code Ann. § 23.1241-42 (Vernon 2008) (regarding inventory valuation
of heavy equipment). These special inventory statutes are specifically excluded from
the traditional January 1 inventory valuations. See Tex. Tax Code Ann. § 23.12(a)
(Vernon 2008).

 In 1995, the motor vehicle inventory statute was amended to deal with a double
taxation problem that had arisen. See Act of May 16, 2005, 74th Leg., R.S., ch. 945,
§ 2. For example, an auto dealer might sell a car on credit, and then, due to a
repossession, sell the same vehicle again. To prevent double taxation, the legislature
created an exception for "subsequent sales," which it defined as "a dealer-financed
sale of a motor vehicle that, at the time of the sale, has been the subject of a dealer-financed sale from the same dealer's motor vehicle inventory in the same year." Id.
(now codified at Tex. Tax Code Ann. § 23.121(a)(12), (b) (Vernon 2008)).

 As other special inventory laws were enacted, similar "subsequent sales"
exceptions were included and the language of the exclusions was virtually identical. 
See Tex. Tax Code Ann. § 23.124(a)(5), (12) (vessel and outboard motors); Tex.
Tax Code Ann. § 23.127(a)(11), (13) (manufactured housing); Tex. Tax Code Ann.
§ 23.1241(a)(3), (8) (heavy equipment).

 Briggs and HCAD agree that these exclusions were enacted to deal with the
issue of the repossession of inventory after a dealer-financed sale, which is not the
situation presented here. Even after the definition of "Dealer's heavy equipment
inventory" was amended to include leases with purchase options, (2) the language of the
"subsequent sale" exclusion remained unchanged. Therefore, the history of the
"subsequent sale" exclusion shows that its limited purpose was to exclude the resale
of dealer-financed, then repossessed equipment, from the dealer's inventory.

 Briggs's Alternative Theories of Recovery

 Briggs also argues that, if this Court disagrees with its interpretation of the
"subsequent sales" exclusion, there are other methods for calculating its taxable
inventory, which would also result in a lower taxable amount than that assessed by
HCAD. Essentially, Briggs argues that its claimed "subsequent sales" could be
reclassified as "fleet transactions," (3) or that its "total annual sales" could be
recalculated to include only actual sales plus rental revenues received.

 However, the trial court's findings of fact and conclusions of law do not
address either of these arguments. If a trial court's original findings do not address
a ground of recovery or a defense, then the party relying on that ground or defense
must request additional findings in proper form. Limestone Group, Inc. v. Sai Thong,
L.L.C., 107 S.W.3d 793, 799 (Tex. App.--Amarillo 2003, no pet.); Levine v.
Maverick Cty. Water Control, 884 S.W.2d 790, 796 (Tex. App.--San Antonio 1994,
writ denied); Sears, Roebuck and Co. v. Nichols, 819 S.W.2d 900, 907-08 (Tex.
App.--Houston [14th Dist.] 1991, writ denied); accord Smith v. Smith, 22 S.W.3d
140, 150 (Tex. App.--Houston [14th Dist.] 2000, no pet.) (noting that appellant had 
duty to request additional findings of fact and conclusions of law in connection with
disproportionate division of community estate or in connection with trial court's
calculation of community portion). By failing to request additional findings of fact
and conclusions of law do so, one waives any complaint about the unmentioned
ground or defense. Smith, 22 S.W.3d at 150; Sears, Roebuck & Co., 819 S.W.2d at
907-08. Given this, Briggs has waived its contention that the trial court erred by not
reducing its tax liability under either of the alternative theories of calculation.

 Accordingly, we overrule issues two through five.

Attorney's Fees

 In issue six, Briggs contends the trial court erred in failing to award attorney's
fees under section 42.29 of the Tax Code, which provides that a property owner who
prevails in appeal to the trial court of an excessive or unequal appraisal may be
awarded reasonable attorney's fees. See Tex. Tax Code Ann. § 42.29 (Vernon
2008). However, Briggs did not prevail in its appeal; thus, the trial court did not err
in refusing to award attorney's fees.

 We overrule issue six.


CONCLUSION

 We affirm the judgment of the trial court.





 Sherry Radack

 Chief Justice


Panel consists of Chief Justice Radack and Justices Alcala and Higley.

1. ' - 
 " 
 - ½ 
 "
2. "' 
 " 
 
 §
 
 §
 ' 
 
 ' 
 
3. " '
 " 
 ' 
§