NO. 07-01-0437-CV

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

MARCH 25, 2003

_____

IN THE INTEREST OF STACEY ANN UVALLE
AND VANESSA UVALLE, CHILDREN

_____

FROM THE 222ND DISTRICT COURT OF DEAF SMITH COUNTY;

NO. DR-97C-050(A); HONORABLE JACK D. YOUNG, JUDGE

_____

Before QUINN and REAVIS, JJ., and BOYD, S.J.[1]

OPINION

Presenting two points in which she contends the trial court reversibly erred, appellant Gracie Uvalle challenges the termination of her parental rights to her daughters Stacey and Vanessa Uvalle. A jury found her parental rights should be terminated on the basis that she had endangered their physical or emotional well-being and that the termination would in the best interest of the children. In her points, she contends 1) the

---

[1]John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. Tex. Gov't Code Ann. §75.002(a)(1) (Vernon Supp. 2003).

trial court erred in denying her first motion for continuance based upon the want of testimony of a party to the case; and 2) the evidence was insufficient to sustain the verdict of the jury. Disagreeing that reversal is required, we affirm the judgment of the trial court.

In March of 1997, appellant and her boyfriend, Frank, purchased a car at a time when appellant admitted that she had been drinking. They washed the car at their home while the two girls sat in the back seat. When they were finished, appellant drove the car with its four occupants from their home at 318 Miller Street in Hereford to her brother's house at 310 Miller Street to get some cigarettes. While they were there, appellant averred that her brother's children began cursing her and Frank and an argument ensued. As she left her brother's house, she said the children began throwing rocks at the car, which broke the windshield, the rear window and the driver's side window. Being frightened, she said, she drove past her house to get to a telephone and call the police. Apparently, as she did so, she encountered the police and they arrested her for driving while intoxicated. As a result of her arrest, her two daughters were placed with the Texas Department of Protective and Regulatory Services (the Department).

In March 2000, the Department filed its petition seeking conservatorship of the children and the termination of appellant's parental rights, which resulted in the trial court order giving rise to this appeal. In its petition, the Department alleged two grounds for termination, first, pursuant to Family Code § 161.001(1)(D), that appellant knowingly placed her two daughters in conditions or surroundings that endangered their physical or emotional well-being, and second, pursuant to § 161.001(1)(E), that she had knowingly placed the children with people who engaged in conduct endangering their physical or

2

emotional well-being. Pursuant to § 161.001(2), it also alleged that termination would be in the best interest of the children.

A hearing on the petition was set for April 30, 2001, and on April 26, 2001, appellant filed a motion seeking a continuance of the trial date. As a basis for the continuance, appellant alleged she needed the essential testimony of Valdo Mendoza, the natural father of her daughter Vanessa. The motion was overruled and the trial commenced on the April 30 date.

At trial, the Department's sole witness was Ben Larson, the caseworker assigned to the case after appellant's arrest. After obtaining temporary custody of the children, as a part of his duty, Larson began preparing a report on appellant and her family and began a check on whether the children could be placed with family members. It was his conclusion that the children could not be placed with family members because all the relatives who were identified either had significant criminal histories, had their parental rights terminated, or had problems with drug use. He opined that substance abuse problems were "endemic with all the family members."

Larson also averred that appellant did not maintain a stable home for the children, often moving from one address to another. The only specific physical problem the children had during the Department's temporary custody was that Stacey needed some fillings in her teeth. He recounted his efforts to create a service plan, including treatment for appellant in Plainview and El Paso, in order that the children could be returned to her custody. He concluded that the Plainview Women's Center was well suited for appellant

3

and the children because it is a residential program in which the children stay with their parents. Although participants typically spend six months in the program, appellant left six days later, informing Larson she left to be with Frank.

In the summer of 1999, appellant was admitted to a treatment program in El Paso. After a few days, she was admitted to a hospital in El Paso. Upon her release from the hospital, she went to Chicago to be with Frank. Because she was on probation from her DWI conviction, she was arrested in Chicago, her probation revoked, and sentenced to serve six years confinement in the Institutional Division of the Department of Criminal Justice. It was after this revocation that the Department began its termination proceedings.

When cross-examined, Larson testified that there had been an allegation of sexual abuse of the children by appellant and Frank in 1997, that was "validated" in 1997, before appellant and the children were placed in the Plainview treatment facility in 1998. However, under continued cross-examination, Larson stated that the children were placed with appellant in the Plainview facility because the abuse was "mild" and the Department was "not one hundred percent sure" it occurred or it would have sought criminal prosecution. The only description Larson gave of the alleged abuse was that appellant had used Stacey to get Frank "excited."

After appellant was incarcerated, in recognition of the programs available, the Department made changes in its service plan. Larson was not aware if appellant participated in prison treatment programs.

4

Appellant testified and recited the events giving rise to her arrest for driving while intoxicated. She admitted she had an alcohol problem and had voluntarily left the Plainview treatment facility in part because she wanted to drink. After leaving Plainview, she averred, she sought treatment through an Amarillo program and continued to have regular visitation with her children. She acknowledged that some of her actions created a risk of losing her children and admitted that she had sought to make changes in her life, but had been unable to do so.

Appellant went on to explain her continued efforts to change while she was in prison, including doing work toward her G.E.D., participating in Alcoholics Anonymous, a job training program, parenting classes, and actively practicing her religion. She felt that the programs had a positive effect on her, that she took better care of herself, and as a result, she felt healthier about herself. In the course of her testimony, she introduced certificates showing her participation in the programs. She also stated that she had relationships with members of her church in Hereford who would provide her support after she was released from prison.

Under cross-examination, appellant said her mother often helped her with the children, but she averred she could care for them even if she was drunk. She acknowledged being hospitalized for short periods four or five times from 1994 to 1997 as a result of her diabetes. She also admitted that she continued drinking, even though doctors told her that was "one of the worst things" a diabetic could do. She also admitted using cocaine with Frank in December 1998.

5

Appellant initially assigns error to the trial court's denial of her motion for a continuance to obtain the testimony of Vanessa's father, Valdo Mendoza. Continuances for the purpose of securing testimony are governed by Rules of Civil Procedure 251 and 252. Rule 251 mandates that to be entitled to a continuance, a movant must make a showing of "sufficient cause, supported by affidavit," or that the parties agree to the continuance or that entitlement to the continuance exists by operation of law. Parenthetically, the motion in question here is not based upon the consent of the parties or by operation of law. Rule 252 provides that if the motion is based upon a want of testimony, the moving party must provide an affidavit showing the testimony is material, the diligence used to secure the testimony, the reason the testimony has not been secured, and the name and address of the witness. On a first motion, as here, the movant need not establish the testimony cannot be secured from another source.

In her motion, appellant noted the April 30, 2001 trial setting and alleged that she had no information on Mendoza's location before April 23, 2001, when a child support order was filed with the district clerk showing the name of his employer in Maryland. She had been unable to verify the information as of the April 25, 2001 date of the motion. However, the motion stated that Mendoza "may well possess relevant and valuable evidence." Appellant swore to the truth of the facts stated in the motion, but did not present a separate affidavit.[2] Although the motion was signed by appellant's attorney, his signature was not verified and he did not provide an affidavit.

---

[2]In *Hawthorne v. Guenther*, 917 S.W.2d 924, 929 (Tex. App.–Beaumont 1996, writ denied), the court opined that a separate affidavit is not required if the motion for continuance is verified.

The denial of a motion for continuance is measured by an abuse of discretion standard. We presume the trial court has not abused its discretion when the motion for continuance does not conform to the provisions of the rules. *Garcia v. Texas Employers Ins. Assn.,* 622 S.W.2d 626, 630 (Tex.App.–Amarillo 1981, writ ref'd n.r.e.).

Appellant asserts the trial court erred in denying the motion because it was in full compliance with Rule 252 and the trial court was "made aware of what [she] expected to prove with the absent testimony." Although she does not make record references in her brief, our perusal of the record shows that a hearing on the motion was held during which appellant argued that Mendoza could "shed light on" the nature of the relationship and whether he contributed to her alcohol use. In response, the Department pointed out that Mendoza had not had contact with appellant or his daughter for several years.

As we have noted, Rule 252 mandates that a motion for continuance to secure testimony be supported by an affidavit showing the testimony is material, the diligence used to secure the testimony, and the reason the testimony has not been secured. Accepting appellant's verification of the motion as satisfying the affidavit requirement, she merely states in the motion that Mendoza "may well" have relevant information. That is not sufficient to satisfy the Rule 252 requirement. Additionally, counsel's unsworn statements at the hearing on the continuance motion as to what Mendoza's testimony might be added little to the written motion and also fell short of meeting the showing required by the rule. Additionally, the motion completely fails to show the diligence used to secure Mendoza's testimony. Indeed, counsel's argument at the motion hearing indicated a lack of diligence. At the beginning of the hearing, counsel stated, "I guess everybody had an address for Mr.

7

Mendoza except me." Thus, under the record before us, we cannot say the trial court abused its discretion in denying appellant a continuance. Appellant's first issue is overruled.

In her second issue, appellant challenges the factual sufficiency of the evidence to sustain either of the two grounds alleged as a basis for the termination of her parental rights. Reiterated, as a basis for termination, the Department alleged that appellant had 1) knowingly placed or allowed the children to remain in conditions that endangered the physical or emotional well-being of the children, and 2) engaged in conduct or knowingly placed the children with people who engaged in conduct that endangered the physical or emotional well-being of the children. The Department also alleged that termination would be in the best interest of the children.

Termination requires the Department to establish one of the statutory grounds by clear and convincing evidence. Tex. Fam. Code Ann. § 161.001 (Vernon 2002); *Richardson v. Green*, 677 S.W.2d 497, 499 (Tex. 1984). This heightened standard is required because a termination of parental rights affects a fundamental constitutional right. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985).

Our supreme court, *In the Interest of C.H.*, 89 S.W.3d 17 (Tex. 2002), recently resolved the split previously existing between the courts of appeals as to the standard to be used in determining factual sufficiency challenges in cases such as this one. The court explicated that in cases in which the burden is to establish a right to judgment by "clear and convincing evidence" rather than the preponderance of the evidence standard traditionally

8

used in civil cases, "the appellate standard for reviewing termination findings is whether the evidence is such that a factfinder could reasonably form a firm belief or conviction about the truth of the State's allegations." *Id.* at 25. That standard focuses on whether a reasonable factfinder could form a firm conviction or belief while retaining the deference that an appellate court must have for the factfinder's role. *Id.* at 26. *See also In the Interest of G.M.*, 596 S.W.2d 846, 847 (Tex. 1980).

In support of this point, appellant argues that 1) termination may not be based upon a single act or omission,[3] and 2) the Department improperly relies upon appellant's failure to meet their expectations rather than establishing she placed the children's physical or emotional well-being at risk. In support of her second argument, appellant references the established rule that the term "endanger" as used in Chapter 161 of the Family Code means more than a threat of metaphysical injury or the possible effects of a less-than-ideal family environment. *Tex. Dept. of Human Services v. Boyd*, 727 S.W.2d 531, 533 (Tex. 1987). Finally, appellant argues that the facts of this case are similar to those in *In re K.C.M.*, 4 S.W.3d 392 (Tex. App.–Houston [1st Dist.] 1999, pet. denied), in which the appellate court reversed a judgment terminating parental rights. In *K.C.M.,* the Department sought termination of the parental rights of a mother who was a long time marijuana user and who had smoked that drug at the end of her pregnancy with K.C.M. She also worked as a prostitute. She admitted to the regular use of crack cocaine, but never used any drugs in the presence of her child. Although the Department determined that the child's maternal grandparents were not suitable to care for the child, it determined that his

_____

[3] *See In re K.M.M.*, 993 S.W.2d 225 (Tex. App.–Eastland 1999, no writ).

paternal grandmother would be suitable. The mother was arrested for possession of a small amount of cocaine and sentenced to one year's confinement. At the time of trial, she had completed a G.E.D. course and was awaiting test results. She attended Alcoholics Anonymous programs, completed life skills and career exploration courses, actively sought information about K.C.M., and was to be released from confinement within 75 days. It was upon that evidence that the appellate court found the evidence insufficient to support termination and reversed the trial court termination judgment.

We believe the facts in *K.C.M.* are distinguishable from those before us. In *K.C.M.*, the only evidence of endangerment was the mother's drug use. In contrast, the record here shows appellant's conduct created a much more tangible risk of injury to her children. In *K.C.M.*, the mother began treatment and education immediately on entering jail and, more importantly, had completed three of those programs, including a G.E.D. program. Appellant did not participate in programs until a few months before trial and had not completed any of the programs. In *K.C.M.*, the child was placed with a relative and the mother would be released within 75 days. Here, appellant will not be available to care for the children for several years and the children could not be placed with a family member, requiring them to remain in foster care for an extended period.

Additionally, here the initial act that brought appellant to the attention of the Department was not the sole basis supporting a finding of endangerment. Appellant does not dispute that driving while intoxicated with the children in the car placed them at risk. Even so, in reviewing that evidence, that risk must be evaluated against the undisputed fact that her destination was only four houses down from her home and there is nothing

10

in the record to show that she had ever driven under the influence of alcohol with the children in the car on any other occasion.

However, in evaluating the evidence here, we must also consider Larson's testimony received by the court that appellant's conduct and habits clearly endangered the children's well-being.  Additionally, the jury could consider that although appellant acknowledged that she had placed the children at risk when she drove while intoxicated, the credibility of that acknowledgment was weakened by her insistence that she could take care of them while she was drunk. The jury could also have found appellant's history of alcohol abuse and the resulting hospitalization on several occasions was evidence that she had endangered the children's well being on those occasions.  The fact that appellant had relied on her mother to care for the children on occasion placed them at risk because of evidence that the mother had her parental rights terminated on two occasions and had a history of drug use. Moreover, the evidence that appellant and the children moved frequently could support an inference of risk to the children's emotional well being.  Appellant's departure from the Plainview Women's Center, at least in part because she wanted to drink, also could be interpreted that she placed a higher priority on her desire for alcohol than in remaining with her children.

In addition to her own testimony, the evidence appellant presented controverting the Department's evidence consisted of testimony from members of her church concerning her participation in church and certificates showing she had participated in prison treatment and education programs.  However, it is worthy of note that appellant's participation in the programs began a year after she was in prison and only a short time before the trial,

11

circumstances from which a trier of fact could reasonably infer her participation was solely for purposes of the trial. It is axiomatic that the jury, as the exclusive finders of fact, was free to assess the weight to be given the evidence and the credibility of the witnesses. *Leyva v. Pacheco*, 163 Tex. 638, 358 S.W.2d 547, 549 (1962). The jury is free to believe one witness and disbelieve another and to resolve any inconsistencies in any testimony. *McGalliard v. Kuhlmann,* 722 S.W.2d 694, 697 (Tex. 1986).

Under this record, the evidence is sufficient that the jury, as factfinder, could reasonably form a firm conclusion or belief about the truth of the Department's allegations. Appellant's second point is overruled. In sum, both of appellant's points are overruled and the judgment of the trial court is affirmed.

John T. Boyd
Senior Justice