Affirmed as Modified and Opinion filed January 19, 2006









Affirmed
as Modified and Opinion filed January 19, 2006.

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-04-00682-CV

____________

 

KEN W. DAUGHERTY,
JR.,
Appellant

 

V.

 

MEL JACOBS, Appellee

 



 

On Appeal from the 80th
District Court

Harris County, Texas

Trial Court Cause No. 02-03556

 



 

O P I N I O N

This is a Deceptive Trade Practices (DTPA)
case.  Tex.
Bus. & Com. Code Ann. ' 17.44 et seq.
(Vernon 2002 & Supp. 2005). 
Asserting six issues, appellant, Ken Daugherty, appeals a judgment in
favor of appellee, Mel Jacobs, in a suit arising from Daugherty=s repair of Jacobs= 1960 Jaguar.  We affirm the judgment as modified.  








Factual and
Procedural Background

In late 1999, Mel Jacobs approached Ken
Daugherty at Daugherty=s repair shop, K&K Vintage Motorcars,
seeking repair and restoration work on Jacobs= 1960 Jaguar.  After visiting with Daugherty two times to
assess whether K&K should undertake this repair and restoration project,
Daugherty prepared an estimate in the amount of $16,165.  Both parties understood this was not a firm
price but an estimate because unforseen repairs could arise.  Daugherty told Jacobs the timeline for repair
should take between two and three months and warranted all work for one year.

Between January and September 2000,
K&K worked on Jacobs= Jaguar. 
Each month, Daugherty would send an invoice to Jacobs, which included a
brief description of the work performed, any parts required, and the
charge.  Each month, Jacobs paid those
invoices, which totaled approximately $30,000 by September.  In September 2000, Daugherty informed Jacobs
the vehicle was ready for pick up.  When
Jacobs went to K&K, the repairs were not completed, and Jacobs refused to
take possession of the vehicle until all work was performed according to the
original agreement.  K&K kept the
vehicle until January 2001 when Jacobs returned to retrieve his Jaguar.  K&K billed Jacobs two more times, in
October and December 2000, for approximately $5,900.  Jacobs paid these invoices in order to take
possession of the vehicle, but he found many of the problems still had not been
resolved, so he stopped payment on the final check.  








Jacobs then took the Jaguar to Heritage
Motors to complete the work begun by K&K. 
While the Jaguar was at Heritage Motors, Daugherty took possession of
the Jaguar pursuant to a mechanic=s lien and held
the car until Jacobs agreed to repay the stopped check plus attorney=s fees and
interest.  Daugherty attempted to file
criminal charges against Jacobs with the Harris County District Attorney=s Office for check
fraud, but that office never accepted any charges.  To regain his vehicle and prevent Daugherty
from selling it at public auction, Jacobs paid Daugherty the money
requested.  After Jacobs retrieved the
Jaguar, Daugherty agreed to honor the warranty, so Jacobs brought the vehicle
back to K&K for further repairs. 
Daugherty charged Jacobs for some additional work and parts, which
Jacobs believed should all have been included under the original one year
warranty.  Reluctantly, Jacobs paid
Daugherty all remaining invoices as charged. 


Jacobs found another repair shop in
California to correct the defective work and finish all work not completed by
K&K.  Jacobs paid approximately
$10,000 for this additional work.  All
repairs were completed to Jacobs= satisfaction by
the shop in California.  

Jacobs subsequently filed this lawsuit
against Daugherty and K&K alleging negligence, breach of contract,
violations of the Texas Deceptive Trade Practices and Consumer Protection Act,
fraud, breach of warranty, and breach of bailment / conversion.  A jury found in favor of Jacobs on all
questions and assessed damages, as follows: 
$17,000 economic damages; $10,000 mental anguish damages; $10,000 for
acts committed knowingly by K&K; $5,000 for acts committed knowingly by
Daugherty; and reasonable and necessary attorney=s fees in the
amounts of $34,000 for trial, $7,500 for appeal to the Court of Appeals, and
$5,000 for appeal to the Supreme Court. 
Daugherty and K&K originally appealed the judgment of the trial
court.  K&K filed bankruptcy, and
this court severed K&K=s appeal and
stayed that appeal for bankruptcy proceedings. 
We only consider Daugherty=s issues in this
appeal.

Discussion

Daugherty presents six issues for our
review:  (1) factual sufficiency of the
jury=s finding
Daugherty engaged in false, misleading, or deceptive acts or practices; (2)
factual sufficiency of the jury=s finding
Daugherty engaged in unconscionable conduct; (3) factual sufficiency of the
jury=s finding
Daugherty committed fraud against Jacobs; (4) factual sufficiency of the jury=s finding
Daugherty acted knowingly; (5) trial court=s error in denying
Daugherty=s motion for continuance because of the
unavailability of Daugherty=s expert witness;
and (6) trial court=s error in awarding unconditional attorney=s fees for appeal
to the Court of Appeals or Supreme Court.                         








I.                   
Factual Sufficiency

A.                
Standard of Review

In Daugherty=s first through fourth issues, he
asserts the jury=s
findings were factually insufficient. 
When a party claims the evidence is factually insufficient to support a
finding to which the other party had the burden of proof, the attacking party
must demonstrate no sufficient evidence exists to support the adverse
finding.  Croucher v. Croucher,
660 S.W.2d 55, 58 (Tex. 1983).  The
appellate court must examine the entire record, considering both the evidence
in favor of and contrary to the judgment. 
Plas-Tex, Inc. v. U.S. Steel Corp., 772 S.W.2d 442, 445 (Tex. 1989);
IKON Office Solutions, Inc. v. Eifert, 125 S.W.3d 113, 123B24 (Tex. App.CHouston
[14th Dist.] 2003, pet. denied).  We will
set aside a finding only if it is so contrary to the overwhelming weight and
preponderance of the evidence as to be clearly wrong and unjust.  Pool v. Ford Motor Co., 715 S.W.2d
629, 635 (Tex. 1986); Cain v. Bain, 709 S.W.2d 175, 176 (Tex.
1986).  As the reviewing court, we do not
substitute our judgment for that of the trial court merely because we might
have reached a different result.  Mar.
Overseas Corp. v. Ellis, 971 S.W.2d 402, 407 (Tex. 1998).  In applying this standard of review, only the
jury may determine the credibility of witnesses and weight given to that
testimony.  GTE Mobilnet of S. Tex.
L.P. v. Pascouet, 61 S.W.3d 599, 615B16
(Tex. App.CHouston
[14th Dist.] 2001, pet. denied).  

The public policy underlying
the Texas Deceptive Trade Practices Act (DTPA) is the protection of consumers
from false, misleading, and deceptive business practices and unconscionable
actions.  Tex. Bus. & Com. Code Ann. '
17.44 (Vernon 2002).  To achieve this
goal, the legislature has mandated the DTPA shall be liberally construed and
applied.  Id.  We must view Daugherty=s actions with this legislative
directive in mind.  Latham v. Castillo,
972 S.W.2d 66, 68 (Tex. 1998).








B.                
Producing Cause of Damages

1.                 
False, Misleading, or Deceptive Acts

In issue one, Daugherty
challenges the jury=s finding
Daugherty engaged in false, misleading, or deceptive acts or practices, which
were the producing cause of Jacobs=
damages.[1]  The elements of this DTPA action are:  (1) the plaintiff is a consumer; (2) the
defendant engaged in false, misleading, or deceptive acts; and (3) these false,
misleading, or deceptive acts constituted a producing cause of the consumer=s damages.  See Tex.
Bus. & Com. Code Ann. '
17.50(a)(1) (Vernon Supp. 2005); Doe v. Boys Clubs of Greater Dallas, Inc.,
907 S.W.2d 472, 478 (Tex. 1995).  Any
false, misleading, or deceptive act must also be relied upon by the
consumer.  Tex. Bus. & Com. Code Ann. '
17.50(a)(1)(B).  

Generally, an act is false,
misleading, or deceptive if it has the capacity to deceive an average or
ordinary person, even though that person may have been ignorant, unthinking, or
credulous.  Doe, 907 S.W.2d at 479B80; Spradling v. Williams, 566
S.W.2d 561, 562 (Tex. 1978).  The DTPA=s purpose in making misrepresentations
actionable is to ensure descriptions of goods or services offered for sale are
accurate.  Doe, 907 S.W.2d at 480;
Pennington v. Singleton, 606 S.W.2d 682, 687 (Tex. 1980).  Oral representations, whether made before or
after the execution of an agreement, are not only admissible but may serve as
the basis of a DTPA action.  Weitzel
v. Barnes, 691 S.W.2d 598, 600 (Tex. 1985). 









Daugherty, as the owner of
K&K Vintage Automotive, may be held personally liable under the DTPA.  If evidence exists an agent personally made
misrepresentations under the DTPA, then that agent can be held personally
liable.  Miller v. Keyser, 90
S.W.3d 712, 718 (Tex. 2002).  Agent
liability is not affected by a person=s
position in the company.  Id. at
717.  Jacobs testified Daugherty told him
K&K was the best in Houston, perhaps the best in the country, for repairing
Jaguars.  Daugherty agreed to warrant the
work for one year on anything not quite right. 
Daugherty estimated the work would take two to three months to complete
and would cost approximately $16,165. 
Jacobs testified he relied on Daugherty=s
representations, and over most of the thirteen months his Jaguar was at
Daugherty=s shop,
he thought things were going fine. 
Jacobs believed it was too soon to know otherwise until he finally
picked up his Jaguar.  

When Jacobs picked up the
Jaguar in September 2000, it was filthy, ran with a knock in the engine, and
had a dim front light.  Jacobs refused to
take the car until Daugherty completed the repairs.  In October 2000, Daugherty gave Jacobs 41
hours of free labor, but Daugherty still charged Jacobs for things Jacobs
believed had already purchased.  Jacobs
understood everything from the October and December 2000 invoices should have
been under warranty, but he still paid the invoices.  Jacobs wrote a check for the remaining
balance owed in order to take the car with him. 
When Jacobs returned in January 2001 to finally pick up the Jaguar, the
engine still knocked and there were problems with the electrical system.   

Jacobs= expert, Allen Delong, testified about
the repairs he did on Jacobs=
vehicle after Jacobs delivered it to Delong in California and about the
invoices Jacobs received from Daugherty. 
Delong testified the Acorrelation
of repairs@
completed by Daugherty did not make sense. 
Repairs were completed in the wrong order and with the wrong
procedures.  He testified he believed the
repairs were not completed in the manner in which they were charged.  He saw charges on invoices for things that
should have been charged months prior. 
He also testified services were repeating themselves between
invoices.  He believed the invoices
seemed made up to look pretty.  He
testified Daugherty overcharged for parts and labor, Daugherty charged labor
for work that did not seem necessary and was the product of his own mistake,
and the work completed was substandard. 
Delong believed and so testified the work completed by Daugherty should
have cost no more than $17,000 and should have taken no more than three
months.   








At trial, Jacobs also had to
introduce evidence that the false, misleading, or deceptive acts were the producing
cause of his injuries.  See Doe,
907 S.W.2d at 481; Home Sav. Ass=n
v. Guerra, 733 S.W.2d 134, 136 (Tex. 1987). 
A producing cause is a substantial factor, which brings about the injury
and without which the injury would not have occurred.  Doe, 907 S.W.2d at 481; Prudential
Ins. Co. of Am. v. Jefferson Assoc., Ltd., 896 S.W.2d 156, 161 (Tex.
1995).  Producing cause lacks the element
of foreseeability embraced by the standard of proximate cause.  Dubow v. Dragon, 746 S.W.2d 857, 860
(Tex. App.CDallas
1988, no writ); Riojas v. Lone Star Gas Co., 637 S.W.2d 956, 959  (Tex. App.CFort
Worth 1982, writ ref=d
n.r.e.).

When analyzing producing
cause, the plaintiff must have shown some unbroken causal connection between
the allegedly deceptive act and the actual damages suffered.  See Prudential, 896 S.W.2d at 161; Bartlett
v. Schmidt, 33 S.W.3d 35, 39 (Tex. App.CCorpus
Christi 2000, pet. denied).  Texas courts
require consideration of intervening and superceding causes.  See Doe, 907 S.W.2d at 481; Bartlett,
33 S.W.3d at 39.  If the defendant can
demonstrate a new and independent basis for the plaintiff=s injuries, such proof may negate the
assertion that the defendant=s
acts were the producing cause of the plaintiff=s
injury.  See Doe, 907 S.W.2d at
481.








Jacobs produced ample
evidence at trial that Daugherty=s
faulty and incomplete repairs in concert with the duplicitous invoicing cost
Jacobs approximately $18,000 and ten months of time more than Daugherty
originally quoted.  Jacobs testified he
paid Daugherty approximately $35,000 by the time Jacobs  picked up the Jaguar from Daugherty for the
final time.  In addition, Jacobs had to
send the vehicle to another shop for completion of the repairs, costing
approximately $10,000.  At trial,
Daugherty sought to emphasize a break in the causal connection between the
repairs made at Daugherty=s
shop and Delong=s
observations of the Jaguar because of the time the Jaguar spent in Jacobs= garage and its transport by truck to
California.  Daugherty also testified any
work to rebuild the engine was outside the original estimate and he performed
different work than the work Delong performed. 
The jury=s role as
fact finder analyzes any alternative theory and gives it appropriate
weight.  See GTE Mobilnet, 61
S.W.3d at 615B16.  The jury was within its province to
disbelieve this alternate theory of causation. 


The plaintiff must also show
he detrimentally relied on the deceptive act. 
Henry Schein, Inc. v. Stromboe, 102 S.W.3d 675, 686 (Tex.
2002).  Jacobs testified he relied on
Daugherty=s
representations when work began and throughout the time the Jaguar was at
Daugherty=s
shop.  The jury may choose to give this
testimony whatever weight it deems appropriate. 
See GTE Mobilnet, 61 S.W.3d at 615B16.  

After examining the entire
record and considering the evidence both supporting and contrary to the challenged
findings, the jury=s answer
to question four is not so contrary to the overwhelming weight and
preponderance of the evidence as to be clearly wrong and unjust.

2.                 
Unconscionable Conduct or Course of Action

In issue two, Daugherty
challenges the jury=s finding
Daugherty engaged in unconscionable conduct or course of action, which was the
producing cause of Jacobs=
damages.[2]  An action may be maintained under the DPTA if
the consumer has been adversely affected by any unconscionable action or course
of action by any person.  Tex. Bus. & Com. Code Ann. ' 17.50; Sw. Lincoln-Mercury, Inc. v.
Ross, 580 S.W.2d 2, 5 (Tex. App.CHouston
[1st Dist.] 1979, no writ).  AUnconscionable action or course of
action@ is
defined by section 17.45(5) of the Texas Business & Commerce Code as Aan act or practice which, to a consumer=s detriment, takes advantage of the
lack of knowledge, ability, or experience, or capacity of the consumer to a
grossly unfair degree.@  Tex.
Bus. & Com. Code Ann. '
17.45(5).  








Taking advantage of a
consumer=s lack of
knowledge to a grossly unfair degree requires showing the resulting unfairness
was glaringly noticeable, flagrant, complete, and unmitigated.  State Farm Lloyds v. Nicolau, 951
S.W.2d 444, 451 (Tex. 1997); Chastain v. Koonce, 700 S.W.2d 579, 583
(Tex. 1985).  This will be determined by
examining the entire transaction and not by inquiring whether Daugherty
intended to take advantage of Jacobs or acted with knowledge or conscious
indifference.  See Chastain, 700
S.W.2d at 583B84.  There must be a showing of what the consumer
could have or would have done if he had known about the information.  Peltier Enters., Inc. v. Hilton, 51
S.W.3d 616, 623 (Tex. App.CTyler
2000, pet. denied).  There would also
need to be some showing of the consumer=s
knowledge, ability, experience, or capacity. 
Id. at 624.  








Jacobs testified he never
received any details about the work performed over the course of the thirteen
months until litigation began.  Once they
were in litigation, the back up to the invoices did not match the work done
according to the invoices.  Jacobs
testified Daugherty double charged Jacobs for some services and charged for
what looked like Daugherty=s
errors.  Daugherty added to the charges
for work done outside K&K creating a profit on that work for Daugherty, but
Jacobs testified he had been told these items would be a pass through at the
cost charged by the outside shop, not an upcharge.  Jacobs testified Daugherty charged for the
same work three or four times and for work that was never done at all.  Delong=s
testimony further supported Jacobs=
testimony in great detail.  Delong and
Jacobs each testified about the details of every invoice produced by
Daugherty.  Each pointed out
duplications, and Delong provided details about why those charges seemed inappropriate
or duplicative.  Important to this issue,
Delong testified there is no way Jacobs could have understood these bills.  In addition, the jury heard combined
testimony between Jacobs and Delong that items Daugherty had claimed to have
repaired were still not repaired when the Jaguar came to Delong=s shop, and this testimony provides
some evidence Daugherty failed to properly repair Jacobs=
Jaguar.  See Mercedes-Benz of N. Am., Inc.
v. Dickerson, 720 S.W.2d 844, 855 (Tex. App.CFort
Worth 1986, no writ) (holding the repeated appearance of numerous defects in a
car, some of which remained uncorrected when suit was filed, are at least some
evidence appellant failed to properly repair car and provide or install proper
replacement parts).    

As with false, misleading,
or deceptive acts, it is not enough that consumers merely prove unconscionable
action or course of action, they must also prove those actions were the
producing cause of actual damages.  Latham,
972 S.W.2d at 69.  As stated earlier,
Jacobs has shown his damages were caused by Daugherty=s
actions, and those actions were not mitigated by any superceding or intervening
causes alleged by Daugherty in his defense at trial or in this appeal.  After examining the entire record and
considering the evidence both supporting and contrary to the challenged
finding, we hold the jury=s
answer to question five is not so contrary to the overwhelming weight and
preponderance of the evidence as to be clearly wrong and unjust. 

C.                
Fraud

In issue three, Daugherty
challenges the factual sufficiency of the evidence supporting the jury=s finding Daugherty committed fraud
against Jacobs.  A cause of action for
fraud is proved by establishing:  (1) a
material misrepresentation was made; (2) was known to be false when made or was
asserted without knowledge of its truth; (3) was intended to be acted upon; (4)
was relied on; and (5) caused injury to the party who relied on the
misrepresentation.  Dow Chem. Co. v.
Francis, 46 S.W.3d 237, 242 (Tex. 2001); Formosa Plastics Corp. USA v.
Presidio Eng=rs and
Contractors, Inc., 960 S.W.2d 41, 47B48
(Tex. 1998). 








The testimony by Jacobs and
Delong about the bills sent to Jacobs by Daugherty establishes all the elements
of common law fraud.  Through his
invoices, Daugherty represented what work his shop completed on Jacobs= Jaguar.  Daugherty sent Jacobs those invoices with the
intent Jacobs would pay them as represented. 
Daugherty admitted during his testimony that he personally reviewed all
the invoices before sending them to Jacobs. 
If there were mistakes in the billings, Daugherty would have detected
those mistakes because, as he testified, that was his purpose in reviewing the
invoices.  A plaintiff may use direct or
circumstantial evidence to prove a defendant knew of the falsity of a
representation.  Johnson & Higgins
of Tex., Inc. v. Kenneco Energy, Inc., 962 S.W.2d 507, 526 (Tex.
1998).  By sending those bills to Jacobs,
Daugherty represented they were correct. 
Jacobs testified he relied on Daugherty=s
representations about the work being completed. 
Ultimately, Jacobs suffered injury because, as he learned during
discovery prior to trial, Daugherty overcharged him by approximately $18,000,
according to Jacobs= expert,
Delong. 

Daugherty contends this
issue should be analyzed under the elements of fraud by non-disclosure.  We disagree. 
The trial court charged the jury according to the elements of common law
fraud by misrepresentation, not fraud by non-disclosure.[3]  Therefore, whether Daugherty possessed a duty
to disclose information to Jacobs is irrelevant to this analysis.  Having reviewed all the evidence supporting
and contrary to the finding, we hold the jury=s
answer to question six is not so contrary to the overwhelming weight and
preponderance of the evidence as to be clearly wrong and unjust. 








D.                
Knowing Conduct

Finally in issue four,
Daugherty challenges the factual sufficiency of the evidence supporting the
jury=s finding
Daugherty acted knowingly.[4]  AKnowingly@ means Aactual
awareness, at the time of the act or practice complained of, of the falsity,
deception, or unfairness of the act or practice giving rise to the consumer=s claim . . . but actual awareness may
be inferred where objective manifestations indicate that a person acted with
actual awareness.@  Tex.
Bus. & Com. Code Ann. '
17.45(9).  Actual awareness does not mean
merely that a person knows what he is doing. 
St. Paul Surplus Lines Ins. Co., Inc. v. Dal-Worth Tank Co., Inc.,
974 S.W.2d 51, 53B54 (Tex.
1998).  Rather, it means that a person
knows what he is doing is false, deceptive, or unfair.  Id. at 54.  AIn
other words, a person must think to himself at some point, >Yes, I know this is false, deceptive,
or unfair to him, but I=m
going to do it anyway.=@ 
Id.  Actual awareness is
more than conscious indifference to another=s
rights of welfare.  Id. 

Daugherty testified he
reviewed every invoice before sending it to Jacobs to ensure no mistakes were
made and all billings were correct. 
Daugherty=s own
testimony, coupled with Delong=s
adamant testimony about the mistakes, overcharges, and duplications on the
invoices provided the jury with evidence Daugherty acted knowingly when
Daugherty engaged in false, misleading or deceptive acts or practices, and in
an unconscionable action or course of action, both of which were producing
causes of damages to Jacobs.  We hold the
jury=s answer
to question six is not so contrary to the overwhelming weight and preponderance
of the evidence as to be clearly wrong and unjust.   

II.                
Motion for Continuance








In Daugherty=s fifth issue, he asserts the trial
court abused its discretion by denying his motion for continuance when his
expert witness was unable to attend trial. 
The granting or denying of a motion for continuance rests within the
sound discretion of the trial court.  State
v. Crank, 666 S.W.2d 91, 94 (Tex. 1984); Hernandez v. Heldenfels,
374 S.W.2d 196, 202 (Tex. 1963).  We will
not disturb a trial court=s
ruling absent abuse of discretion.  Crank,
666 S.W.2d at 94; Hycarbex, Inc. v. Anglo-Suisse, Inc., 927 S.W.2d 103,
112 (Tex. App.CHouston
[14th Dist.] 1996, no writ).  In deciding
whether the trial court abused its discretion, the appellate court will not
substitute its own judgment for that of the trial court, but it only decides
whether the trial court=s
action was arbitrary, unreasonable, and without reference to any guiding rules
and principles.  Yowell v. Piper
Aircraft, Corp., 703 S.W.2d 630, 635 (Tex. 1986); In re E.L.T., 93
S.W.3d 372, 374B75 (Tex.
App.CHouston
[14th Dist.] 2002, no pet.).  

Texas Rules of Civil
Procedure 251 and 252 govern Daugherty=s
motion for continuance for purposes of securing testimony.  See In re Uvalle, 102 S.W.3d 337, 340B41 (Tex. App.CAmarillo
2003, no pet.).  Rule 251 requires a
court to grant a continuance for sufficient cause supported by affidavit,
consent of the parties, or operation of law. 
Tex. R. Civ. P. 251.  Under rule 252, if the basis for the
application is want of testimony, the applicant Ashall
make affidavit that such testimony is material, showing the materiality
thereof, and that he has used due diligence to procure such testimony, stating
such diligence, and the cause of the failure, if known.@  Tex.
R. Civ. P. 252. 








The absence of a material
witness is sufficient cause for granting a continuance, but only if the party
used proper diligence to procure the testimony of the witness.  Fritsch v. J.M. English Truck Line,
246 S.W.2d 856, 858 (Tex. 1952); Lynd v. Wesley, 705 S.W.2d 759, 764
(Tex. App.CHouston
[14th Dist.] 1986, no writ).  Daugherty=s bill of exceptions asserts Daugherty=s expert witness was testifying in
Illinois at another trial when this trial was set to begin.  Daugherty filed a motion for continuance to
move the trial date from the 7th to the 18th of February.  The court granted that motion.  On the date trial began, Daugherty=s witness informed Daugherty he was
unable to travel from his home in Arizona to Houston on the revised date
because his location at the time prevented him from traveling on such short
notice.  Daugherty argued the inability
to call the expert witness prejudiced his case, as the jury would be unable to
hear testimony about the reasonableness of the work performed by Daugherty on
Jacobs=
Jaguar.  However, the record contains no
affidavit in support of Daugherty=s
oral assertions.  If a motion for
continuance is not verified or supported by affidavit, we will presume the trial
court did not abuse its discretion in denying the motion.  Villegas v. Carter, 711 S.W.2d 624,
626 (Tex. 1986); Ohlhausen v. Thompson, 704 S.W.2d 434, 436B37 (Tex. App.CHouston
[14th Dist.] 1986, no writ).  

Daugherty failed to show why
the absent witness=s
testimony could not have been taken by deposition.  See Gregg v. Cecil, 844 S.W.2d 851,
853 (Tex. App.CBeaumont
1992,  no writ); see also Green
v. State, 589 S.W.2d 160, 163 (Tex. App.CTyler
1979, no writ) (holding motion for continuance failed to show reasonable
diligence when testimony could have been obtained by taking deposition);
Sanders v. Kan. City Life Ins. Co., 152 S.W.2d 506, 508 (Tex. App.CAmarillo 1941, writ ref=d) (holding trial court did not abuse
its discretion and appellant did not show due diligence when the application
failed to show any attempt to secure the deposition of the missing
witness).  The requirement for diligence
does not subside simply because the unavailable witness is a party=s designated testifying expert at
trial.  See Stiles v. Royal Ins. Co.
of Am., 798 S.W.2d 591, 596B97
(Tex. App.CDallas
1990, writ denied) (upholding trial court=s
denial of motion for continuance when treating physician was not available for
trial and appellant did not use proper due diligence to obtain testimony from
that witness through subpoena or deposition). 








Daugherty argues defense
counsel=s
statements and bill of exceptions at trial should be considered evidence in
support of the motion because Jacobs did not object.  We disagree. 
First, unsworn statements by counsel are not evidence.  In re Butler, 987 S.W.2d 221, 225
(Tex. App.CHouston
[14th Dist.] 1999, no pet.).  Second,
trial counsel=s
statement explaining the reasons for the motion to the trial court does not
meet the requirements of rules 251 and 252. 
See In re Uvalle, 102 S.W.3d at 341 (holding trial counsel=s statements added little to the
written motion and fell short of meeting the requirements of rule 252); Hawthorne
v. Guenther, 917 S.W.2d 924, 929B30
(Tex. App.CBeaumont
1996, writ denied) (holding appellant=s
attorney=s hearsay
recital of matters told to him by appellant=s
drug counselor did not rise to the level of an affidavit to support a motion
for continuance).  Third, rules 251 and
252 do not require Jacobs to object in order to force Daugherty to comply with
those rules.  Rules 251 and 252 clearly
recite the requirements necessary for a trial court to consider a motion for
continuance, and none of those requirements force the party opposing the motion
to lodge an objection with the trial court under any circumstance.  See Tex.
R. Civ. P. 251, 252.  

Before this trial began, the
trial court granted two prior motions for continuance.  The parties agreed to the first motion, and
Daugherty filed the second motion.  With
the second motion, Daugherty included an affidavit from his expert detailing
the reasons for the expert=s
inability to travel to Houston for trial, specifically his expert was in
Illinois testifying at a different proceeding. 
Daugherty also made the third motion at issue on appeal, but he failed
to include an affidavit.  Daugherty
clearly demonstrated his understanding of the rules and ability to comply with
them on at least one prior occasion.  If
parties choose to forego their rights under the rules and resort to other less
effective and less certain means of procuring the testimony of a material
witness, they must be held to the risk they will be put to trial without the
benefit of the testimony.  Fritsch,
246 S.W.2d at 859.  Daugherty has failed
to rebut the presumption the trial court did not abuse its discretion in
denying the motion for continuance. 
Therefore, we overrule Daugherty=s
fifth issue.

III.              
Attorney=s
Fees








In Daugherty=s
sixth issue, he complains the trial court=s
award of attorney=s fees
for appeal to this court and to the supreme court was improper because the
court did not condition the award on the success of such appeal.  Jacobs correctly agrees.  The trial court should have awarded attorney=s fees to Jacobs conditioned upon
successful appeal to this court and the supreme court.  Mem=l
City Gen. Hosp. Corp. v. Cintas Corp., 679 S.W.2d 133, 139 (Tex. App.CHouston [14th Dist.] 1984, no
writ).  However, the trial court=s error in  the judgment does not mandate reversal when a
portion of the judgment relating to the manner of the award of attorney=s fees was unauthorized.  Id. 
The judgment may be modified on appeal so as to correct the
award.  Id.  Accordingly, we modify the trial court=s judgment to condition the award of
attorney=s fees on
appeal to Jacobs= success
on appeal. 

 

Conclusion

Having considered Daugherty=s issues on appeal, we overrule issues
one through five and sustain issue six. 
We affirm the judgment of the trial court as modified.  

 

 

 

 

 

/s/         John S. Anderson

Justice

 

 

 

 

Judgment rendered and Opinion filed January 19,
2006.

Panel consists of Chief Justice Hedges and
Justices Yates and Anderson.

 











[1]  This issue
relates to jury question four, which asked, ADid any
of the parties named below, [sic] engage in any false, misleading or deceptive
acts or practices that were a producing cause of damages to Jacobs?@  The jury
answered Ayes@ as to Daugherty. 





[2]  This issue
relates to jury question five, which asked, ADid any
of the parties named below engage in any unconscionable action or course of
action that was a producing cause of damages to Jacobs?@  The jury
answered Ayes@ as to Daugherty. 






[3]  Jury question
six defined fraud as:  AA person makes a material misrepresentation, the
misrepresentation is made with knowledge of its falsity or made recklessly
without any knowledge of the truth and as a positive assertion, the
misrepresentation is made with the intention that it should be acted on by
another, and the other party acts in reliance on the misrepresentation and
thereby suffers injury.@  The elements
of fraud by non-disclosure are: (a) a party fails to disclose a material fact
within the knowledge of that party; (2) the party knows that the other party is
ignorant of the fact and does not have an equal opportunity to discover the
truth; (3) the party intends to induce the other party to take some action by
failing to disclose that fact; and (4) the other party suffers injury as a
result of acting without knowledge of the undisclosed fact.  Customer Leasing, Inc. v. Tex. Bank &
Trust Co. of Dallas, 516 S.W.2d 138, 142 (Tex. 1974); see also Fogus v.
Moreno, No. 04-03-00679-CV, 2004 WL 1562068, at *3 (Tex. App.CSan Antonio July 14, 2004, no pet.) (not designated
for publication) (comparing the elements of fraud by misrepresentation to fraud
by non-disclosure).  





[4]  Having
answered Ayes@ to questions four and five, the jury considered
question six:  ADid any of the parties named below engage in such
conduct knowingly?@  The jury
answered Ayes@ as to Daugherty.