In The

## *Court of Appeals*

## *Ninth District of Texas at Beaumont*

_____

### NO. 09-12-00425-CV
_____

### IN THE INTEREST OF K.S. AND C.D.S.

---

**On Appeal from the 279th District Court
Jefferson County, Texas
Trial Cause No. F-213,090**

---

### MEMORANDUM OPINION

L.S. appeals the trial court's order terminating her parental rights to her children K.S. and C.D.S.[1]  In five issues, L.S. argues that the trial court abused its discretion by denying her motion for continuance and motion to extend her dismissal date, not timely providing her with appointed counsel, and she argues the evidence is legally and factually insufficient to support the trial court's judgment

---

[1] After a hearing, the trial court determined by clear and convincing evidence that both K.S.'s and C.D.S.'s fathers were unknown. The court further found that it was in the best interest of both children to terminate the rights of their respective unknown fathers.  Based on these findings, the trial court terminated the unknown fathers' rights to K.S. and C.D.S. There are no issues in this appeal concerning the termination of the fathers' rights.

1

terminating her parental rights. We conclude L.S.'s issues are without merit and affirm the trial court's judgment.

## I. FACTUAL BACKGROUND

The Texas Department of Family and Protective Services received information that L.S. had abandoned her children, K.S. and C.D.S. Upon being unable to contact L.S., the Department immediately removed K.S. and C.D.S. from the home in which the children had been left. The Department filed its petition for protection, conservatorship, and termination of L.S.'s parental rights.

Eva Blanchard, a Child Protective Services worker with the Department, testified that she was assigned to handle L.S.'s case. Blanchard testified that K.S. was born in 2002, and C.D.S. was born in 2003. She explained that the children entered foster care in August 2011 after L.S. left them in the care of a person they did not know, for three days. She further testified that L.S. left no contact information when she left the children.

Blanchard described the children's experiences prior to removal, while they were in their mother's care. She testified that the children were frequently moved around. Blanchard testified that when the children were questioned, both indicated that they had been left with strangers on more than one occasion. The children told Blanchard that their mother had moved them in with men they did not know.

2

Blanchard stated that the Department had investigated this family once before for abandonment issues--that L.S. has a pattern of abandoning her children. Blanchard testified that when the children came into the Department's care, they had no health problems and there was no indication of abuse. The children were appropriately immunized and were in the appropriate school grade for their ages and performing well.

L.S. denied that the Department had previously investigated her for abandonment issues and explained to the court that the prior investigation concerned L.S.'s mother, who was the children's caretaker while L.S. was in prison. L.S. explained that while her mother had also served a substantial sentence in prison, when her mother was released from prison, L.S. believed she had changed her life. Because of these changes, L.S. believed her mother was a good choice to care for her children while L.S. served her sentences in prison.

L.S. testified that at times she left K.S. and C.D.S. with her stepmother, but she insisted that her stepmother knew how to locate her, and that her children had everything they needed while in her stepmother's care. L.S. admitted to moving her and her children in with a man that the children did not know. While L.S. testified that she had known the man for three years, she admitted that she did not know the man's real name, only his nickname. She testified that she always made

3

sure the children had a roof over their heads by making sure that they had a room at her stepmother's home. She testified that she always left her children with responsible people, provided them with what they needed while she was gone, and left her contact information.

Specifically in regards to the incident that prompted the Department to remove her children, L.S. testified that she left the children with someone that she had known for four years. She insisted that the person knew how to get in contact with her, but according to L.S. the person contacted the Department to remove the children because she was upset with L.S. L.S. explained that when the children went into the Department's care, she was in Houston trying to find employment. She testified she was relying on other people for transportation, so it took her a few days to get back.

L.S. testified that she has never abused or hurt her children in any way and at the time the Department took custody of them they were physically healthy. She explained that despite her struggles with addiction, she made sure that her children were fed, bathed, properly clothed, went to church, and had an opportunity to play recreational basketball. She testified that her oldest child had access to her food stamps and knew how to use them to get groceries.

4

The trial court found that it was in the children's best interest to terminate L.S.'s parental rights and appoint the Department as the permanent managing conservator of the children. The court found that L.S. knowingly placed or allowed the children to remain in conditions that endangered their physical or emotional well-being, that she engaged in conduct or placed the children with persons who engaged in conduct that endangered the physical or emotional well-being of the children, that she failed to comply with the provisions of a court order that specifically established the actions she needed to take for her children to be returned to her, and that she used a controlled substance in a manner that endangered the health or safety of the children and failed to complete a court-ordered substance abuse treatment program.

## II. MOTION FOR CONTINUANCE

In her fifth issue, L.S. complains that the trial court erred in denying her motion for continuance.[2] This case was originally set for trial on May 22, 2012.

---

[2] As part of her fifth issue, L.S. also argues the trial court erred in not granting her an extension of the dismissal date. On August 9, 2011, the court appointed the Department as temporary sole managing conservator of K.S. and C.D.S. The original date for dismissal of the case was August 13, 2012. On July 31, 2012, L.S. filed a motion to extend the dismissal date to February 13, 2013. According to the motion, L.S. wanted the extension to have more time to complete the Department's service plan. The trial court granted L.S.'s request and reset the dismissal date to February 13, 2013. L.S. received the six-month extension she

The trial court appointed L.S. counsel on May 22, 2012, and at that time continued the case to July. In July, at L.S.'s request, the case was reset again to September 4, 2012, and on that day, L.S. sought a third continuance of her case. L.S. argued three bases for her request for a third continuance: (1) she had insufficient time to assist her recently appointed attorney in representing her effectively, (2) she needed more time to secure additional witness testimony, and (3) she needed additional time to complete her service plan. The trial court denied her request.

We review a trial court's denial of a motion for continuance in a termination of parental rights case for an abuse of discretion. *In re E.L.T.*, 93 S.W.3d 372, 374 (Tex. App.—Houston [14th Dist.] 2002, no pet.); *In re H.R.*, 87 S.W.3d 691, 701 (Tex. App.—San Antonio 2002, no pet.). A trial court shall not grant a motion for continuance "except for sufficient cause supported by affidavit, or by consent of the parties, or by operation of law." Tex. R. Civ. P. 251; *In re H.R.*, 87 S.W.3d at 701.

A. Additional Time to Assist Attorney in Representation

L.S. contends she had insufficient time to aide her attorney in the presentation of her case. L.S. had previously sought and received a continuance of

---

requested; therefore, the portion of her fifth issue regarding the dismissal date is moot.

the termination proceeding. As the basis of her prior request, she argued that she had insufficient time to assist her appointed attorney in representing her interests. However, general allegations that an attorney has had insufficient time to prepare are not necessarily sufficient cause for granting a continuance. *See Blake v. Lewis*, 886 S.W.2d 404, 409 (Tex. App.—Houston [1st Dist.] 1994, no writ).

B.      Additional Time to Secure Witness Testimony

L.S. further contends she needed a continuance to secure additional witness testimony. To obtain a continuance based on the need to secure additional testimony, Rule 252 provides that the motion for continuance must be supported by an affidavit showing the testimony is material, the due diligence used to secure the testimony, and the reason the testimony has not been secured. Tex. R. Civ. P. 252. L.S. filed a verified motion, but did not file a supporting affidavit. In her verified motion, L.S. requested a continuance because she "has witnesses whose testimony [she] believes is crucial to this case." But "[t]he witnesses are unable to be present at the trial [setting]." L.S. did not elaborate further in her motion regarding this basis of her request.

L.S. failed to identify the material witnesses and the substance of their expected testimony. L.S. further failed to set forth the diligence used to try to

secure their testimony and her reasons for having failed to secure their testimony in a timely manner. L.S.'s motion is insufficient to satisfy Rule 252.

At the hearing on the motion, L.S. stated that she needed the continuance in order to secure two additional witnesses to testify on her behalf, including her AA sponsor and her aunt. L.S. explained to the court that she had not secured these witnesses because she did not understand what was taking place the day of the hearing. She asked the court for more time so that her aunt could testify. She explained that her aunt, whom the Department had investigated and determined to be an inappropriate placement for the children because of her husband, would testify that she was willing to obtain a divorce if the Department would approve her home for placement. We conclude that the unsworn statements of L.S.'s counsel and of L.S. at the hearing on the motion for continuance failed to meet the requirements of Rule 252. We cannot say the trial court abused its discretion in denying L.S.'s motion on this basis. *See In re Uvalle*, 102 S.W.3d 337, 341 (Tex. App.—Amarillo 2003, no pet.) ("We presume the trial court has not abused its discretion when the motion for continuance does not conform to the provisions of the rules.")

C.     Additional Time to Complete Service Plan

L.S. also sought a continuance on the grounds that she needed additional time to complete her service plan. It is not sufficient cause to simply assert that a parent needs more time to complete a family service plan when the parent has had sufficient opportunity to perform the service plan but failed to do so. *In re J.D.L.R.*, No. 04-11-00774-CV, 2012 WL 1364988, at *1 (Tex. App.—San Antonio Apr. 18, 2012, no pet.) (mem. op.); *see also* Tex. R. Civ. P. 251; *In re H.R.*, 87 S.W.3d at 701.

At the hearing, L.S. explained that when the Department removed her children she did not understand that they could be returned to her if she completed the service plan. She told the court that she had not completed anything on the service plan due to her finances and because she was unaware she could still work the plan.

L.S. had over a year to complete her service plan. The children went into the Department's care in August 2011. The Department developed a plan of service for L.S. in September 2011 and December 2011. The evidence in the record suggests that L.S. made little effort to comply with her plan. In fact, L.S. admitted to having done nothing toward completing the service plan. The evidence in the record establishes that even after the court granted her an initial continuance, she failed to

9

take any actions in furtherance of her service plan. Finally, the children's ad litem opposed the motion for continuance and explained to the court that he did not think it was in the children's best interest to delay the termination proceeding any longer.

We conclude that L.S. did not demonstrate sufficient cause to grant her motion. Therefore, the trial court acted within its discretion when it denied L.S.'s motion for continuance. We overrule L.S.'s fifth issue.

### III. APPOINTED COUNSEL

In her third issue, L.S. contends that the trial erred in not timely appointing her counsel to represent her in the termination case as required by section 11.10(d) of the Texas Family Code. The trial court appointed L.S. counsel on May 22, 2012. L.S. argues that the Department never intended to reunite her with her children, and the court should have appointed her an attorney earlier to advise her and represent her during the preliminary hearings in the case. To further justify an earlier appointment of counsel, L.S. argues that she suffered from a mental illness that justified an earlier appointment of counsel and that the Department was aware that she suffered from this condition. The Department contends that L.S. waived the third issue.

We conclude that L.S. failed to complain to the trial court about the timeliness of the trial court's appointment of counsel. When L.S.'s counsel was

10

appointed on May 22, L.S.'s counsel advised the trial court she was in a position to accept the case. By the time this case went to trial, counsel had been appointed to the case for over 100 days. L.S. did not complain at trial that her counsel was not timely appointed. L.S. did not argue to the trial court that her mental illness necessitated earlier appointment of counsel. We find L.S. waived this issue by failing to present this complaint to the trial court. *See* Tex. R. App. P. 33.1.

However, even if L.S. had preserved error, we find this issue without merit. The Texas Family Code requires the court to appoint an attorney for an indigent parent who opposes termination, but the statute does not impose a deadline by which the appointment must occur. Tex. Fam. Code Ann. § 107.013(a)(1) (West Supp. 2012). Therefore, "the timing of appointment of counsel to indigent parents appearing in opposition to termination is a matter within the trial court's discretion." *In re M.J.M.L.*, 31 S.W.3d 347, 354 (Tex. App.—San Antonio 2000, pet. denied). The trial court was presented evidence that during the preliminary stages of this case, while the Department was seeking termination of the parental rights of L.S., L.S. was in agreement with the plan as long as the Department was seeking adoption of the children by a relative. As soon as that option was no longer available to the Department, the trial court appointed L.S. legal counsel. We conclude that the trial court did not abuse its discretion in delaying the appointment

11

of counsel for L.S. until she opposed the termination and L.S. has shown no prejudice by any such delay. We overrule L.S.'s third issue.

## IV. LEGAL AND FACTUAL SUFFICIENCY

In her fourth issue, L.S. claims that the evidence is legally and factually insufficient to show that she failed to comply with the provisions of the court order that established the actions she needed to take to obtain the return of the children. In her second issue, L.S. further claims the evidence is legally and factually insufficient to show that termination was in the children's best interest. In reviewing the legal sufficiency, we consider all of the evidence in the light most favorable to the termination finding to determine whether a reasonable trier of fact could have formed a firm belief or conviction about the truth of the matter on which the Department had the burden of proof. *In re J.L.*, 163 S.W.3d 79, 84-85 (Tex. 2005). We assume the factfinder resolved any disputed facts in favor of its finding, if a reasonable factfinder could do so, and disregarded all evidence that a reasonable factfinder could have disbelieved. *Id.* at 85 (quoting *In re J.F.C.*, 96 S.W.3d 256, 266 (Tex. 2002)).

In a factual sufficiency review, we give "due consideration" to any evidence that the factfinder could reasonably have found to be clear and convincing. *In re J.F.C.*, 96 S.W.3d at 266 (citing *In re C.H.*, 89 S.W.3d 17, 25 (Tex. 2002)). We

12

consider the disputed evidence and determine whether a reasonable factfinder could have resolved that evidence in favor of the finding. *Id*. The evidence is factually insufficient if the disputed evidence that does not reasonably support the finding is so significant that a factfinder could not have reasonably formed a firm belief or conviction. *Id*.

The trial court's involuntary termination of parental rights involves the parent's fundamental constitutional rights. *Holick v. Smith*, 685 S.W.2d 18, 20 (Tex. 1985). Therefore, the evidence that supports termination must be clear and convincing before the court may involuntarily terminate a parent's rights. *Id*.; *see also* Tex. Fam. Code Ann. § 161.001 (West Supp. 2012). The Family Code defines clear and convincing evidence as "the measure or degree of proof that will produce in the mind of the trier of fact a firm belief or conviction as to the truth of the allegations sought to be established." Tex. Fam. Code Ann. § 101.007 (West 2008).

Before the court may terminate parental rights involuntarily, the factfinder must find by clear and convincing evidence (1) that the parent committed one of the statutory grounds found in section 161.001(1) of the Family Code, and (2) that termination is in the child's best interest. Tex. Fam. Code Ann. § 161.001; *see also Tex. Dep't of Human Servs. v. Boyd*, 727 S.W.2d 531, 533-34 (Tex. 1987).

13

A. Statutory Grounds for Termination

One statutory ground for terminating parental rights is the parent's failure to

> comply with the provisions of a court order that specifically established the actions necessary for the parent to obtain the return of the child who has been in the permanent or temporary managing conservatorship of the Department . . . for not less than nine months as a result of the child's removal from the parent . . . for the abuse or neglect of the child[.]

Tex. Fam. Code Ann. § 161.001(1)(O). The trial court ordered L.S. to comply with the Department's service plan. During trial, L.S. admitted that she had failed to complete her family service plan. She admitted that she had done nothing required in the service plan.

According to Blanchard, the Department informed L.S. that it was possible for her to get her children back if she complied with the requirements of the Department's service plan. However, L.S. failed to comply with the Department's service plan, and Blanchard's testimony indicates that L.S. made little effort in attempting to comply with the plan. Blanchard acknowledged that L.S. had been doing well in cosmetology school and had almost completed the program. However, she explained that L.S. was unable to obtain and maintain stable employment for a three month period.

Blanchard testified that L.S. was living with relatives, but that the house was not suitable for her children because there were holes in the floor, it was not clean,

14

and it was too small. Blanchard testified that L.S. continued to live in the house despite having been told repeatedly that it was not appropriate for the children. Blanchard testified that L.S. was late to a number of her family visits and failed to attend two visits. L.S. admitted that she called the Department one time to cancel her visit with her children because there was bad weather and she was concerned for her children's safety traveling.

Blanchard testified that L.S. also failed to complete her parenting education classes. Blanchard never received documentation to prove L.S.'s assertion that she had attended counseling sessions. Though it was recommended that L.S. attend an outpatient drug treatment program, L.S. did not seek treatment. L.S. also failed to complete a psychological examination. Blanchard stated that L.S. has never provided her with documentation that she attended AA.

L.S. testified that she has worked at two restaurants, one for nine months and the other for three months. She testified that Blanchard told her she did not have to take the parenting class. L.S. admitted that she was told she needed a drug assessment and conceded that she failed to have the assessment done. She testified that she went to counseling three times, but did not complete counseling because she believed that her rights were being terminated and her children were going to be adopted by a relative. L.S. testified that she started going to AA recently and

introduced documents into evidence showing she began attending AA meetings the week before trial.

L.S. further testified that she is enrolled in, and had almost completed, a year-long cosmetology program. She stated that she attends school every weekday from 9 a.m. to 5 p.m. She testified it is important for her to finish school because it will provide her with employment that will enable her to care for her children.

L.S. testified she has been living with her aunt and uncle for nine months prior to trial. She testified that her uncle has been a daily part of her children's lives, and they have spent substantial time at her aunt and uncle's house after school.

The factfinder heard testimony that L.S. was unable to obtain and maintain employment or find a suitable home appropriate for her children. The factfinder also heard evidence that L.S. suffers from a severe drug addiction and has failed to seek the treatment she needs. While L.S. testified that she is attending AA, there is evidence in the record that L.S. historically has been unable to stay sober. L.S. did not deny that she uses controlled substances, or that she did not attempt to complete a substance abuse program.

There is ample evidence that appellant failed to comply with the actions established in her service plan to have the children returned to her. L.S. admitted

that she had done nothing toward her service plan, despite having been granted a continuance for that express purpose. L.S. testified that she did not understand that she could get her children back by following the service plan; however, L.S. signed both plans, which contained an attachment that stated:

> TO THE PARENT: THIS IS A VERY IMPORTANT DOCUMENT. ITS PURPOSE IS TO HELP YOU PROVIDE YOUR CHILD WITH A SAFE ENVIRONMENT WITHIN THE REASONABLE PERIOD SPECIFIED IN THE PLAN. IF YOU ARE UNWILLING OR UNABLE TO PROVIDE YOUR CHILD WITH A SAFE ENVIRONMENT, YOUR PARENTAL AND CUSTODIAL DUTIES AND RIGHTS MAY BE RESTRICTED OR TERMINATED OR YOUR CHILD MAY NOT BE RETURNED TO YOU. THERE WILL BE A COURT HEARING AT WHICH A JUDGE WILL REVIEW THIS SERVICE PLAN.

L.S. denied reading this part of the service plan. However, L.S. identified her signature on the service plan. She testified that Blanchard did not go over the service plan with her word for word. Nevertheless, the factfinder could have believed Blanchard's testimony that Blanchard personally spoke with L.S. and told her that the return of the children was a possibility if she completed her service plan.

L.S. testified that she was close to finishing her cosmetology degree and planned to get employment in that area. She also explained her future plans to obtain suitable housing for her children. Until then, she testified that she had a stable residence living with her aunt and uncle that would be suitable for the

children. She maintained this idea even though the Department had declared this residence inappropriate for the children. There is evidence in the record that L.S. failed to maintain employment, failed to maintain appropriate housing, failed to attend visits with her children, failed to complete the parenting education classes, failed to attend counseling, and failed to follow through with outpatient drug treatment or complete a psychological evaluation.

Considering the evidence under the respective standards of review, we conclude that the trial court could have formed a firm belief or conviction that L.S. failed to complete her family services plan and violated section 161.001(1)(O). Therefore, the evidence is legally and factually sufficient to support the trial court's finding that L.S. committed one of the statutory grounds for involuntary termination under section 161.001(1). The trial court terminated L.S.'s parental rights on four grounds. *See* Tex. Fam. Code. Ann. § 161.001(1)(D)(E)(O)(P). If multiple grounds are found by the trial court as a basis for termination, we will affirm on any one ground. *See In re T.N.F.*, 205 S.W.3d 625, 629 (Tex. App.—Waco 2006, pet. denied), *overruled in part on other grounds by In re A.M.*, 385 S.W.3d 74 (Tex. App.—Waco 2012, pet. denied). Therefore, we need not address L.S.'s first issue. We overrule L.S.'s fourth issue.

18

B.    Best Interests of the Children

In her second issue, L.S. contends the evidence is both legally and factually insufficient to support the finding that the termination was in the children's best interest. The Texas Supreme Court has set forth a non-exhaustive list of factors to consider in determining whether termination is in a child's best interest:

(1) the desires of the child,

(2) the emotional and physical needs of the child now and in the future,

(3) the emotional and physical danger to the child now and in the future,

(4) the parental abilities of the individuals seeking custody,

(5) the programs available to assist these individuals to promote the best interest of the child,

(6) the plans for the child by these individuals or by the agency seeking custody,

(7) the stability of the home or proposed placement,

(8) the acts or omissions of the parent which may indicate that the existing parent-child relationship is not a proper one, and

(9) any excuse for the acts or omissions of the parent.

*Holley v. Adams*, 544 S.W.2d 367, 371-72 (Tex. 1976). We recognize a strong presumption that a child's best interest is served by maintaining the parent-child relationship. *In re L.M.*, 104 S.W.3d 642, 647 (Tex. App.—Houston [1st Dist.]

19

2003, no pet.). The party seeking termination need not prove that each *Holley* factor favors termination. *In re C.H.*, 89 S.W.3d at 27.

Blanchard explained in detail L.S.'s struggle with drug addiction. Blanchard testified that L.S. admitted to a history of selling drugs. While L.S. initially denied using drugs, she ultimately admitted to using cocaine and tested positive for both cocaine and PCP. Blanchard testified that L.S. blames her current drug use on the stress caused by the Department's intervention and investigation. Blanchard testified that L.S. also tested positive for PCP in December 2011. The Department attempted to drug test L.S. in May 2012, but L.S. interfered with the test by dipping the container in the toilet water. Blanchard stated that L.S. has refused any additional tests to replace the tainted results. Blanchard further testified that L.S. has a significant criminal history, with a substantial number of drug related convictions. Blanchard told the court that while the termination case was pending, L.S. was arrested for public intoxication.

During the trial, L.S. explained her early exposure to the drug culture. She testified that her mother had gone to prison when L.S. was 16 years old. In order to take care of her three younger siblings, L.S. started selling crack cocaine. L.S. testified that she began using drugs around age 14. She started out abusing alcohol, but eventually also used PCP and cocaine. L.S. testified that she has been addicted

to drugs for about 15 or 16 years. L.S. admitted that she last used PCP, cocaine, and alcohol one month before trial. She quantified her cocaine use as "seldom." She testified that before the Department removed the children she used drugs off and on. L.S. admitted that she continued to sell drugs while she was pregnant with K.S. She testified that she used drugs to help her cope with her emotions and stress. L.S. admitted that she was arrested for public intoxication in February 2012, but denied that she was intoxicated. L.S. stated that MHMR diagnosed her as manic-depressive.

L.S. testified that in her opinion, it is in her children's best interest to live with her. She testified that she loves her children very much and asked the court to return them to her or to place them with a relative. However, in an attempt to have the children adopted by relatives, the Department completed two relative home studies. Blanchard testified that one relative failed the study, and the other notified the Department that he could not afford to take the children. L.S. maintained that the Department had not considered all of her relatives for placement, specifically an uncle. But, during the nine months the children resided with their foster parent, no relative came forward indicating a desire to adopt the children.

The uncle L.S. suggested to the court for placement of her children testified on behalf of L.S. He testified that K.S. and C.D.S. lived with him one of the times

L.S. was in prison. He testified that he loves the children and would like to have them come and live with him. He testified that the children would have their own room. He explained that L.S. currently lives with him, but if the court requires her to live elsewhere for him to get the children, then she had the ability to move. He testified that he planned to help L.S. with a place to stay and with finishing school as long as she continues to "do right." He testified that he would need some financial assistance in order to meet the children's needs, as he only receives disability. L.S.'s uncle admitted that he has a criminal history, which includes assaulting two undercover officers, two convictions for delivery of cocaine, forgery, and an arrest for burglary of a habitation.

Blanchard testified that C.D.S. and K.S. are living in the same foster home and are "doing excellent" and "are very happy there." At the time of the trial, the children had been living with their foster father for approximately nine months. Blanchard testified that they "do the normal family things" with their foster father, including going on vacation and having a sit-down dinner every night. Although the foster father is unmarried, he has a stable home and the children are doing well in school. The foster father has an extended family that provides a support system and helps him with the children. Blanchard testified that the foster father is interested in adopting both boys, and both boys want to be adopted by the foster

father. She testified that the boys love their foster father, and that they feel safe, secure, and connected with him. Blanchard testified that in her opinion it was in the best interest of K.S. and C.D.S. to terminate L.S.'s parental rights.

Lynda Porter, a CASA volunteer, testified that she supervised this case. She testified that despite all that the children had gone through, K.S. and C.D.S. were great kids and are "extremely polite, very well[-]mannered young boys." Porter testified that she believes that K.S. and C.D.S. "raised themselves." She stated that the children want to be adopted by their foster father. She testified that she and the Department tried to "the best of [their] ability to work with [L.S.] and get her to follow her service plans." She testified that she explained to L.S. that she should focus on recovering from her drug addiction rather than getting a cosmetology degree.

The record contains evidence that L.S. loves her children and tried to be a good parent despite her destructive drug addiction. However, the factfinder could have believed that L.S. suffered from severe substance abuse and failed to seek or receive treatment for it. The factfinder could also have found that L.S. was unable to maintain stable employment or find suitable housing for her children. The record contains evidence that the children are happy and thriving in their current placement where they enjoy stability and a normal home life. Their physical,

mental, and medical needs are being met. The children have expressed a desire to be adopted by their foster father. The Department's caseworker testified it was in K.S. and C.D.S.'s best interest to terminate L.S.'s parental rights. The children's guardian ad litem testified he also believed it was in the children's best interest to terminate L.S.'s parental rights. The factfinder could have reasonably agreed with the Department and K.S. and C.D.S.'s guardian ad litem in determining that termination was in K.S. and C.D.S.'s best interest.

After applying the appropriate standards of review and considering the *Holley* factors, we hold the evidence is legally and factually sufficient for a reasonable factfinder to have formed a firm belief or conviction that it is in the best interest of K.S. and C.D.S. for L.S.'s parental rights to be terminated. Accordingly, we overrule L.S.'s second issue and affirm the trial court's judgment.

AFFIRMED.

_____
CHARLES KREGER
Justice

Submitted on December 21, 2012
Opinion Delivered March 14, 2013

Before Gaultney, Kreger, and Horton JJ.

24